[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: PLAINTIFFS MOTION TO MODIFY CODED #141 DEFENDANTS MOTION FOR CONTEMPT CODED #145 AND DEFENDANTS MOTION TO MODIFY CHILD SUPPORT CODED #146
Many of the facts that give rise to the above motions are not in dispute.
The marriage between the parties was dissolved on April 22, 1996. The defendant was ordered to pay support in the amount of $392.00 per week, which was in accordance with the guidelines. The court also entered the following order regarding alimony:
 "The court orders alimony in the amount of $75.00 per week for a period of five years to sooner terminate on Ms. Pethicks remarriage or co-habitation under the statute and case law or either parties death."
The three motions will be discussed seriatim.
I. THE PLAINTIFFS MOTION FOR MODIFICATION CODED #141 CT Page 2614
Paragraph three of the motion for modification as originally filed alleged as follows:
 "3. Since the judgment and orders, certain events have transpired that constitute a substantial change in circumstances, to wit:
 A. The wife has become involved in a personal relationship that constitutes co-habitation, as that term is used in the judgment regarding alimony.
 B. As a result of the wife's personal relationship, her net income has increased in a sum sufficient to constitute a substantial change of circumstances."
At the commencement of the hearing on this matter on January 14, 1999, the plaintiff orally amended the motion to modify alimony by stating he was not proceeding under that part of the judgment that ordered alimony to terminate on "co-habitation under the statute" but rather was proceeding under that portion of the judgment that ordered alimony to terminate on co-habitation under "case-law." Based on that revised claim, the plaintiff objected to any testimony by the defendant as to whether there was any change in her financial circumstances as to the result of her living with an unrelated male and the court sustained those objections. The court does find that on January 6, 1997 the defendant vacated the prior family home and moved in with a male acquaintance together with three of her four minor children. She continued residing at his residence for approximately 6 months with the fourth minor child living with her periodically. She and her friend shared a bedroom. She and her friend and the children vacationed together in Daytona, Florida where they stayed with her mother. They also went to Bermuda together without her children. On July 20, 1997 she purchased a home at in North Branford, Connecticut. Her friend continued to live at his own residence in Branford, Connecticut. None of the approximate $30,000.00 down payment that was needed to close on the property in North Branford, Connecticut came from her friend. The Bermuda trip and the Daytona Florida trip were each in 1997. The defendant moved into her new residence on July 11, 1997. She still spends weekends with him at his residence when he is in town. The defendant was required to sell her prior married residence as a result of the plaintiff failing to comply with the court orders regarding his obligation to make the mortgage CT Page 2615 payments which resulted in the property being under foreclosure.
 C. Plaintiff relies on three primary cases in seeking to terminate alimony under the judgment on co-habitation under "case-law" namely (i) Mihalyak v. Mihalyak, 30 Conn. App. 516
(1993) (ii) Draper v. Draper, 40 Conn. App. 570 (1996) and (iii) DeMaria v. DeMaria, 47 Conn. App. 729 (1998).
 In Mihalyak, the judgment which incorporated an oral stipulation of the parties provided in part that "the wife's right to receive alimony will terminate upon the death of either party or upon the wife's remarriage or co-habitation." Following an evidentiary hearing post-judgment, the trial court found "that the plaintiff was cohabitating or living with another person under circumstances which the court finds should result in a modification, suspension, reduction, or termination of alimony because the living arrangements caused a changed of circumstances as to alter the financial needs of the plaintiff." The court ordered that alimony terminate effective February 14, 1991, the date the defendant filed his motion for modification. The defendant at the post-judgment hearing took the position that since he was seeking to terminate the alimony solely on the basis of the provision in the decree and not pursuant to § 46b-86
that the termination should take place effective upon the date the cohabitation began on September 1, 1988. The Mihalyak court found that the alimony termination provision was automatic and self-executing upon co-habitation and therefore no alimony accrued after September 1, 1988. The grounds for terminated alimony that was sought under Mihalyak was not "case-law" as sought in this case but rather was based on the decree itself that provided that alimony would terminate upon co-habitation. The co-habitation found by the trial court in Mihalyak
post-judgment consisted of the plaintiff living with another person caused a change of circumstances so as to alter the financial needs of the plaintiff. The finding of co-habitation by the trial court in Mihalyak based on the separation agreement of the parties was that the reference in that agreement to co-habitation was co-habitation in accordance with § 46b-86
(b). In this case the plaintiff clearly stated that he was not proceeding on § 46b-86(b) and therefore his reliance on Mihalyak is misplaced.
The plaintiff was also proceeding under case law of Draper, supra. In Draper, there was a separation agreement that provided for the termination of alimony upon death, remarriage, CT Page 2616 co-habitation or July 31, 2001, whichever event shall first occur. The separation agreement defined "co-habitation" to mean that the wife has entered into and maintained a relationship including co-habitation with a man under such circumstances and conditions, over a period of at least three (3) months in any twelve (12) month period, so that they Superior Court of Connecticut concludes that the wife and said man are "living together . . ." The Appellate Court declined to determine whether the defendant was co-habitating within the meaning of § 46b-86(b) because that statute was not incorporated into the parties separation agreement and the cases cited by the defendant were therefore inapposite. The post-judgment hearing resulted in a finding by the trial court that the defendant began living with a man on October 1, 1991. The case-law in Draper, is not applicable to this case in that Draper involved an agreed definition of co-habitation that was defined to mean the wife entered into and maintained a relationship under circumstances and conditions so as to conclude that the wife and the man are "living together." In this case there is not separate definition of co-habitation on the judgment that was entered. Therefore, the case-law and the definition of co-habitation in Draper is not applicable to this case.
 The final case relied upon in this case by the plaintiff is DeMaria, supra. In DeMaria following a limited contested trial the trial court entered an order that provided for alimony "which alimony shall terminate upon . . . the co-habitation of the plaintiff with an unrelated male . . ." Following a postjudgment evidentiary hearing the trial court found that the plaintiff was living with another person but also found that there was no evidence that this fact altered her financial needs and therefore denied the defendants motion to terminate alimony. The Appellate Court at page 731 held in part as follows:
The plaintiff is correct that a change in financial circumstances must be alleged and proved when alimony termination is sought on the basis of the statute. In order to find that party receiving alimony was cohabiting as defined by the statute, the movant has the two-pronged burden of proving that (1) the party receiving alimony was living with another person and (2) the living arrangement caused a change of circumstances so as to the alter the parties financial needs. D'Ascanio v. D'Ascanio, 237 Conn. 481, 486, 678 A.2d 469 (1996). CT Page 2617
 A different rule pertains, however, when relief from alimony is sought pursuant to a clause in the judgment that does not require that the cohabitation alter the financial needs of the cohabiting party. Mihalyak v. Mihalyak, 30 Conn. App. 516, 520-21, 620 A.2d 1327 (1993). In such a situation, proof a cohabitation alone is sufficient to terminate alimony. Id.
 At the time of the evidentiary hearing in this case, this court informed both attorneys that this court had been the trial court in the DeMaria post-judgment motion and that the Appellate Court decision had been appealed to our State Supreme Court. This court further informed both attorneys that the Supreme Court had sought articulation from this court as to whether this court applied § 46b-86 (b) or the common jaw to determine that the plaintiff was not "co-habitating with an unrelated male" as required by the dissolution judgment for the termination of alimony and that this court had responded by stating that § 46b-86 (b) had been applied to determine that the plaintiff was not co-habitating with a non-related-male as required by the dissolution judgment for the termination of alimony. A decision was rendered on February 16, 1999 in 247 Conn. 715 in which the Supreme Court at page 719-720 stated in part as follows:
 "The Appellate Court essentially treated the word "co-habitat" as synonymous with "living together, "and concluded that in view of its finding that the plaintiff was living with an unrelated male, the trial court should have terminated her alimony . . . We conclude, in accordance with the definition contained in 46b-86(b) that the trial court properly construed the term "co-habitation" as used in the dissolution judgment to include the financial impact of the living arrangement on the co-habitating spouse, and accordingly, we reverse the judgment of the Appellate Court."
 As a result of the decision of the Supreme Court in DeMaria, the reliance of the plaintiff on the Appellate Court decision is misplaced.
This court therefore concludes that there is no "caselaw" that forms the basis for the plaintiffs position that merely living together with an unrelated male without any change in financial circumstances can form the basis to terminate alimony in this case. CT Page 2618
 Therefore, the plaintiffs motion to terminate alimony is denied.
II. THE DEFENDANTS MOTION FOR CONTEMPT CODED #145.
In the motion for contempt the defendant alleges as follows in paragraph:
 "One: The defendant in the above entitled action hereby petitions the court to hold the plaintiff in contempt for failing to comply with the support orders of the court. Specifically, the plaintiff is in arrears with respect to his support payments and has ignored his obligations to contribute to extra-curricular activities and medical bills in accordance with the orders of the court.
The original orders of the trial court required the plaintiff to be responsible for the sons hockey program including tuition, uniform, pants, sticks, helmet, and any other assorted necessities, but not the cost of transportation on a weekly basis. It also includes tournaments and travel costs for the son only. It further required the parties to each pay one-half of any health expenditures for the minor children that are not covered by insurance. One of the medical bills that was not fully paid by health insurance is to Dr. Stone in the full amount of $480.00 that the defendant paid in full. The plaintiff therefore owes her $240.00 for that pediatrician bill. There is also an optician bill for which the plaintiff share is $253.93 that was also incurred since the date of dissolution. The total optician bill of $507.81 was paid by the defendant. Neither party is seeking attorneys fees arising out of the contempt motion. The court further finds that the plaintiff owes to the defendant a total of $590.00 regarding hockey tournament expenses for the minor son that the defendant has paid in full. The total arrearage therefore on the medical and hockey tournament expenses is $1,083.93. In addition, the parties have agreed that the plaintiff owes to the defendant the sum of $3,000.00 regarding mortgage payments that he did not make thereby increasing the total arrearage owed by the plaintiff to the defendant to $4,083.93. The court orders that that arrearage be paid at the rate of $40.00 per week and that the arrearage include interest at the rate of 10% per annum.
III. DEFENDANTS MOTION TO MODIFY SUPPORT CODED #146. CT Page 2619
The defendants motion to modify support is based on the allegation that the current support order of $392.00 per week is not in compliance with child support guidelines. The parties are in dispute as to the income that should be attributed to the plaintiff. The plaintiffs financial affidavit dated January 14, 1999 shows gross weekly income of $1,000.00 plus an additional $300.00 weekly for a draw from his occupation as general sales manager less deductions. The court finds that the proper way to determine the plaintiffs income is based on his total 1998 income. Based on the plaintiffs total 1998 income his weekly gross is $1,749.21. The defendants weekly gross including tips is $487.00. Her net weekly income for child support guidelines purposes is $298.00. The plaintiff net weekly income for child support guideline purposes is $1,165.00. The court agrees with the child support guideline calculations of the defendant and finds that under the child support guidelines the amount of support that the plaintiff should be paying is $444.00 per week. His current support order is $392.00 per week which is within 15% of the child support guideline amount of $444.00 a week and is therefore substantially in accordance with the guidelines. Therefore, the defendants motion to increase support is denied. The plaintiff also seeks to have reduced his obligation for hockey expenses on the grounds that they result in his payments exceeding the child support guidelines. The difference between the child support guideline amount of $444.00 and the amount that he is presently paying of $392.00 weekly amounts to $52.00 weekly. That amounts to $2,704.00 annually. The court orders that the plaintiffs obligation for the hockey expenses do not exceed $2,704.00 on an annual basis.
The court further orders that the plaintiffs hockey obligation for the full calendar year 1999 also being the amount $2,704.00.
Axelrod, J.