## WILLIAM F. DRAPER *v.* JANE R. DRAPER
### (12963)

O'Connell, Landau and Spear, Js.

Argued November 28, 1995—decision released March 12, 1996

*Gaetano Ferro*, for the appellant (defendant).

*C. Ian McLachlan*, with whom, on the brief, were *William H. Narwold* and *Laura W. Ray*, for the appellee (plaintiff).

*Elaine S. Amendola*, for the minor children.

LANDAU, J. This appeal arises from an action for the dissolution of marriage. On April 12, 1991, the parties stipulated, pursuant to General Statutes § 46b-51, that their marriage had broken down irretrievably and requested a dissolution. The parties submitted a lengthy and comprehensive written separation agreement that covered, inter alia, alimony, child support and counsel fees. On April 12, 1991, the marriage was dissolved and the agreement, which gave the defendant custody of the parties' two children, was approved as an order of the court.

On October 1, 1991, the defendant began living with a man. They were married on July 4, 1992, thereby terminating the defendant's alimony in accordance with the separation agreement. On July 15, 1992, the defendant filed a motion for child support, prospective and retroactive to the date of her remarriage. She also filed a motion for counsel fees in connection with a motion filed by the plaintiff on August 5, 1992, seeking sole custody of the parties' two children. On July 13, 1993, the plaintiff filed a motion that sought a finding that the defendant's cohabitation began on October 1, 1991, and an order terminating alimony as of that date, rather than the date of the defendant's remarriage. On July 9, 1993, the parties entered into a written stipulation, which was approved and made a court order on that date, providing that the parties would continue to have joint legal custody of their two children who would then have their principal residence with the plaintiff, subject to specific visitation rights of the defendant.

In October, 1993, the trial court, after hearing argument, ruled on the parties' motions and on two additional motions for counsel fees that had been filed by both counsel for the minor children. The trial court awarded child support to the defendant in the amount of $400 per week, but only for the period from October 1, 1991, through August 20, 1992; denied the defendant's

request for attorney's fees; ordered each party to pay one half of the balance due counsel for the minor children; and upon finding that the defendant had commenced "living together" with a man on October 1, 1991, the trial court terminated alimony as of that date.

In her appeal, the defendant claims that the trial court improperly (1) determined child support in that it failed to consider the child support guidelines, failed to calculate the child support payable under the guidelines, and deviated from the guidelines without making the finding required for deviation, (2) granted the plaintiff's motion for a finding regarding cohabitation, and (3) awarded attorney's fees. We affirm the judgment of the trial court.

I

A

The defendant first claims that the trial court improperly awarded less than the presumptive minimum amount of child support under the guidelines of $504 weekly for the period of October 1, 1991, the date on which the defendant began cohabitation, through August 20, 1992, the date on which the plaintiff was awarded temporary custody. She further argues that the court improperly failed to award current child support for the period after August 20, 1992. Because we conclude that the trial court properly found that this was not a guidelines case, we reject the defendant's claims.

General Statutes § 46b-215b does not "require the trial courts to *apply* the Guidelines to all determinations of child support, but creates only a rebuttable presumption as to the amount of child support. It requires only that the trial court *consider* the Guidelines. Moreover, the Guidelines do not contain provisions for disposable incomes in excess of $750." (Emphasis in original.)

*Battersby* v. *Battersby*, 218 Conn. 467, 469–70, 590 A.2d 427 (1991).[1]

The record reveals that the plaintiff's income far exceeded the upper income limit of $1500 in the guidelines. We also note that the defendant agreed with the trial court that this case was not a guidelines case. On July 21, 1993, at the hearing on the motions, the court asked, "Everybody agree it's not a guidelines case, right?" Counsel for the defendant replied, "We're way outside the guidelines for any number of reasons." Nevertheless, the defendant asserts that the trial court should have awarded her the "presumptive minimum" amount of $504 per week based on the upper income limit of $1500 under the guidelines for the period of October 1, 1991, through August 20, 1992. She further claims that the court failed to make a specific finding on the record of the amount of child support required by the guidelines before deciding whether and to what extent, the award should deviate therefrom as mandated by *Favrow* v. *Vargas*, 231 Conn. 1, 25–29, 647 A.2d 731 (1994).

We first note that the defendant's reliance on *Favrow* is misplaced. *Favrow's* requirement that a specific finding of the amount of support required by the child support guidelines must be made on the record was not established until 1994, when that case was decided. The present case preceded *Favrow*, and we will not apply *Favrow* retroactively in these circumstances. Moreover, the defendant not only failed to dispute the trial court's finding that this case was not an appropriate case for the guidelines, she also expressly agreed, on the record, with the trial court. Where the trial court

---

[1] The guidelines in effect when the trial court in *Battersby* made its ruling did not cover weekly incomes in excess of $750. The guidelines have since been updated, effective March 1, 1991, to cover net weekly incomes up to $1500. The 1991 guidelines provide that they do "not apply where the combined net weekly family income exceeds $1,500."

and all the parties agree to try a case on a particular theory or principle of law, we will not permit a party to "ambush" the trial court on appeal. See, e.g., *Suffield Bank* v. *Berman*, 228 Conn. 766, 785, 639 A.2d 1033 (1994); *State* v. *Dennison*, 220 Conn. 652, 657, 600 A.2d 1343 (1991); *State* v. *King*, 216 Conn. 585, 590, 583 A.2d 896 (1990).[2]

B

The defendant further asserts that she was entitled to receive child support for the period after August 20, 1992, despite the fact that as of that date she became the noncustodial parent. She argues that the court improperly failed to award support because the parties had agreed she should receive child support and prior to its ruling, the court had encouraged them to reach a settlement. Because the parties failed to reach a settlement on their own, she continues, the only issue for the court to decide was the amount.

While it is a fundamental policy of our courts to promote settlement by agreement where possible in dissolution cases; *Jenks* v. *Jenks*, 34 Conn. App. 462, 468–70, 642 A.2d 31 (1994), rev'd on other grounds, 232 Conn. 750, 657 A.2d 1107 (1995); a trial court's comments and efforts to promote negotiations are no more binding on the court than they are on the parties. Moreover, the defendant has failed to provide any authority to support her claim that the trial court was mandated to award child support to her as a noncustodial parent.

II

In her second claim, the defendant asserts that the trial court improperly construed the parties' separation

---

[2] Because the parties agreed that this was not a guidelines case, the amount of support under the guidelines was not at issue. It was not necessary, therefore, for the trial court to make a determination of the guidelines support level.

agreement. She claims that she is entitled to alimony from October 1, 1991, through July 4, 1992, because the plaintiff did not file his motion seeking to terminate alimony until after her remarriage. She argues that the court misinterpreted the agreement's definition of cohabitation because the trial court made cohabitation a condition that automatically terminated alimony despite a provision in the agreement[3] to the contrary. The trial court, she continues, should have taken the definition of cohabitation, as defined by the parties in paragraph 4.10 of the agreement, to mean that alimony will terminate as of the date the Superior Court declares that the parties are "living together."

"A trial court's construction of a separation agreement is an issue of fact subject to review under the limited standard of whether it is clearly erroneous. . . . The action of the trial court will not be disturbed unless it abused its legal discretion in making its determination." (Citation omitted.) *Albrecht* v. *Albrecht*, 19 Conn. App. 146, 159, 562 A.2d 528, cert. denied, 212 Conn. 813, 565 A.2d 534 (1989). Here, the separation agreement provides for termination of alimony upon death, remarriage, cohabitation or July 31, 2001, *"whichever event shall first occur."* (Emphasis added.) That the parties defined "cohabitation" so as to avoid any ambiguity does not make the termination provision any less enforceable upon a determination by the trial

[3] The separation agreement provides in pertinent part: "4.1 Commencing as of the first day of April, 1991, the Husband shall pay to the Wife, during his lifetime, until her death, remarriage, cohabitation, as defined herein, or July 31, 2001, whichever event shall first occur, the following sums as alimony . . . .

"4.10 . . . The Husband shall be permitted to seek a modification in the event of the cohabitation of the Wife . . . . For the purposes hereof, cohabitation shall be defined to mean that the Wife has entered into and maintained a relationship including cohabitation with a man under such circumstances and conditions, and over a period of at least three (3) months in any twelve (12) month period, so that the Superior Court of Connecticut concludes that the Wife and Said man are 'living together' . . . ."

court of cohabitation. Moreover, the fact that the plaintiff was permitted to "seek a modification" to enforce his right to have his alimony obligation terminated does not mean that the separation agreement itself did not provide for termination upon cohabitation.

We conclude that the parties agreed, in the separation agreement, that the trial court would decide whether and when the defendant was "cohabitating"; they also agreed that alimony would terminate automatically when the defendant began cohabitating.[4]

### III

Finally, the defendant claims that, because the plaintiff's income is substantially larger than hers, the trial court improperly exercised its discretion in denying her motion for counsel fees and ordering both parties to pay one half of the outstanding fees of counsel for the minor children.

"Courts ordinarily award counsel fees in divorce cases so that a party (usually the wife) may not be deprived of her rights because of lack of funds." (Internal quotation marks omitted.) *Febbroriello* v. *Febbroriello*, 21 Conn. App. 200, 204–205, 572 A.2d 1032 (1990). The trial court's decision, however, to award such fees is a matter of discretion. *Petro* v. *Petro*, 31 Conn. App. 582, 583, 626 A.2d 791 (1993); *Febbroriello* v. *Febbroriello*, supra, 204. Counsel fees are not to be awarded merely because the potential obligor has the financial ability to pay. *Koizim* v. *Koizim*, 181 Conn. 492, 500–501, 435 A.2d 1030 (1980). If the trial court determines that "both parties are financially able to pay their own counsel fees, they should be permitted to do so." Id., 501. Moreover, an award of counsel fees is not justified

---

[4] The defendant seeks a determination by this court of whether she was cohabitating within the meaning of General Statutes § 46b-86 (b). We decline to do so because this statute was not incorporated into the parties' separation agreement and the cases cited by her are, therefore, inapposite.

when the potential obligee has ample liquid funds. *Miller* v. *Miller*, 16 Conn. App. 412, 418–19, 547 A.2d 922, cert. denied, 209 Conn. 823, 552 A.2d 430 (1988).

A careful reading of the record clearly shows that the trial court properly exercised its discretion. The trial court specifically found that the defendant "had the ability to pay, and did pay [her counsel] $98,000 and [attorneys for the minor children] $3000." The court also found that each party had the ability to pay one half of the outstanding fees owed to the children's counsel. We conclude on the basis of the total financial resources of the parties that the court, in denying the defendant's request for counsel fees, did not undermine its prior financial orders. *Fitzgerald* v. *Fitzgerald*, 190 Conn. 26, 34, 459 A.2d 498 (1983).

The judgment is affirmed.

In this opinion the other judges concurred.