# DEBORAH A. AMODIO *v.* VINCENT N. AMODIO
## (AC 15692)

O'Connell, C. J., and Foti, Lavery, Landau, Schaller, Spear, Hennessy, Vertefeuille and Dupont, Js.

Argued September 23, 1999—officially released January 25, 2000

*Richard L. Goldblatt,* for the appellant (plaintiff).

*Donald L. Altschuler,* with whom, on the brief, was *Richard Altschuler,* for the appellee (defendant).

*Opinion*

DUPONT, J. The primary issue of this appeal is whether General Statutes (Rev. to 1989) § 46b-86 (a), as amended by Public Acts 1990, No. 90-213, § 46,[1] precludes modification of the amount of child support awarded at the time of a judgment of dissolution of marriage in accordance with a written agreement of the parties that precluded such modification,[2] which agreement was incorporated by reference into the judgment of dissolution. The support award was substantially more than the child support guidelines promulgated pursuant to

---

[1] At the time of the dissolution judgment, General Statutes (Rev. to 1989) § 46b-86 (a), as amended by Public Acts 1990, No. 90-213, § 46, which took effect on July 1, 1990, provided: "Unless and to the extent that the decree precludes modification, any final order for the periodic payment of permanent alimony or support or an order for alimony or support pendente lite may at any time thereafter be continued, set aside, altered or modified by said court upon a showing of a substantial change in the circumstances of either party. After the date of judgment, modification of any child support order issued before or after [July 1, 1990] may be made upon a showing of such substantial change of circumstances, whether or not such change of circumstances was contemplated at the time of dissolution. By written agreement, stipulation or by decision of the court, those items or circumstances that were contemplated and are not to be changed may be specified in the written agreement, stipulation or decision of the court. This section shall not apply to assignments under section 46b-81 or to any assignment of the estate or a portion thereof of one party to the other party under prior law."

We are not involved in this case with whether the amendments to § 46b-86 (a) involving child support guidelines, Public Acts 1990, No. 90-188, § 1, and Public Acts 1991, No. 91-76, § 1, which took effect after the judgment of dissolution in this case, may be retroactively applied to child support awards. *Turner* v. *Turner,* 219 Conn. 703, 720, 595 A.2d 297 (1991), answers that question in the affirmative. See also *In re Eden F.,* 250 Conn. 674, 741 A.2d 873 (1999).

[2] The agreement of the parties "clearly and unambiguously forecloses modification of the support order unless the defendant earns more than $900 per week." *Amodio* v. *Amodio,* 45 Conn. App. 737, 742, 697 A.2d 373 (1997).

Public Acts 1989, No. 89-203, § 1, now General Statutes § 46b-215a,[3] and the court rendering the judgment of dissolution made no specific finding that the application of the child support guidelines would be inequitable or inappropriate. The plaintiff appeals from the judgment of the trial court granting the defendant's motion to modify the amount of child support.[4]

This is the second time this issue has been raised in this court. We previously reversed the judgment of the trial court on the ground that the trial court lacked subject matter jurisdiction to modify the defendant's child support obligation because the dissolution decree clearly and unambiguously foreclosed modification of the support order under the financial circumstances presented. *Amodio* v. *Amodio*, 45 Conn. App. 737, 742, 697 A.2d 373 (1997). Our Supreme Court reversed our decision, concluding that the trial court had the jurisdiction to entertain the motion for modification. *Amodio* v. *Amodio*, 247 Conn. 724, 724 A.2d 1084 (1999). The case was remanded to this court for a determination of "whether the trial court properly exercised its author-

[3] Public Act 89-203, § 1, provides in relevant part: "The commission for child support guidelines is established to review the child support guidelines promulgated pursuant to section 8 of public act 85-548 [not codified], to establish criteria for the establishment of guidelines to ensure the appropriateness of child support awards and to issue updated guidelines not later than January 1, 1991 and every four years thereafter. . . ." Public Act 89-203, § 1, took effect July 1, 1989, and was codified as General Statutes § 46b-215a on January 1, 1991.

[4] The motion to modify was granted because the child support order at the time of the parties' dissolution of marriage and as of the date of the motion deviated by more than 15 percent from the guidelines promulgated pursuant to § 46b-215a.

If the trial court properly granted the motion to modify, it would be necessary to remand the case to the trial court for a hearing. "In determining whether to modify a child support order based on a substantial deviation from such child support guidelines the court shall consider the division of real and personal property between the parties set forth in the final decree and the benefits accruing to the child as the result of such division. . . ." General Statutes § 46b-86 (a). This was not done by the trial court before it rendered judgment modifying the child support amount.

ity in granting the motion to modify."[5] Id., 732. The Supreme Court made it clear that its decision that the trial court had jurisdiction "does not mean necessarily that the trial court correctly interpreted or applied the statute in this case; nor does it mean that modification was warranted." Id.

The following facts are relevant to our disposition of this appeal. The plaintiff, Deborah A. Amodio, and the defendant, Vincent N. Amodio, were married on May 11, 1979, and had two children born in 1983 and 1985. On July 31, 1990, the parties stipulated that their marriage had broken down irretrievably and requested a dissolution. The parties submitted a lengthy and comprehensive written separation agreement to the court that covered, inter alia, alimony, child support, medical insurance for the children, counsel fees and division of assets. The agreement was drafted by the defendant's counsel. The judgment of dissolution, dated July 31, 1990, provided: "It is further adjudged and decreed that the parties comply with the provisions of an Agreement between them dated July 26, 1990, which is found by the Court to be fair and equitable under all circumstances and is approved and incorporated herein by reference." The agreement and the judgment provided for $325 per week in child support for their two minor children and did not award alimony to either party.

The agreement provided for the joint custody of the two minor children and for reasonable visitation by the defendant with the children, who were to reside with the plaintiff. The defendant had the right to claim the two children as his dependents for tax purposes. Paragraph 3D stated: "It is agreed that any modification of support orders sought in the future shall be based upon

---

[5] The Supreme Court also required us, on remand, to decide the issue of whether the trial court improperly applied *McHugh* v. *McHugh*, 27 Conn. App. 724, 609 A.2d 250 (1992). *Amodio* v. *Amodio*, supra, 247 Conn. 727 n.3.

a change in circumstances reflecting an increase in gross wages above the base of $900.00 per week as stated in the affidavit filed herewith."[6] Paragraph eleven of the agreement provided: "The parties agree that this Agreement shall be submitted to the Court before which said pending action for dissolution shall be tried, and in the event a judgment of dissolution shall be entered in said action or any other action which may hereafter be brought in favor of either party against the other, the parties hereto agree that they shall be bound by all the terms of this Agreement, and this Agreement shall not be merged in any decree or judgment that may be granted in such action, but shall survive the same and shall be forever binding and conclusive on the parties, and the decree or judgment in such action shall incorporate in full or in substance the terms of this Agreement."

After paying child support as ordered in the judgment of dissolution for almost five years, the defendant, on April 7, 1995, sought a modification of the support order because the order did not conform to the child support guidelines as they existed in 1990 or as of the date of the defendant's motion to modify. He sought a support order pursuant to the guidelines of June 1, 1994.

At the hearing on the motion to modify, the defendant testified that he worked for a family business at the time of dissolution and still did, and had a gross income

[6] It is clear from the testimony of the plaintiff at the time of dissolution that the provision as to nonmodifiable child support unless the defendant earned more than $900 was to protect the defendant from a motion to modify child support by the plaintiff. At the dissolution hearing, the plaintiff's counsel questioned her as to whether she understood the provision in the agreement precluding modification:

"The Court: That if you desire to return to court to seek a modification of child support, the court will be considering that your husband was earning $900 gross income at the time of the dissolution of your marriage in its deliberation as to whether or not to modify any future support. Do you understand that?

"[The Plaintiff]: Yes, now I do."

of $900 per week both at the time of the dissolution and at the date of his testimony. The trial court noted that the guidelines were in effect at the time of the dissolution, and that the nonmerger of the agreement in the decree might mean that the plaintiff would have a separate action against the defendant if there were a downward modification of child support. The court stated that the amount of child support currently being paid is not in accordance with the guidelines, and that, on the basis of *McHugh* v. *McHugh*, 27 Conn. App. 724, 609 A.2d 250 (1992), because the court entering the initial orders did not explain the deviation, the guidelines govern.

The defendant claimed at the modification hearing that the original trial court acted improperly, as a matter of law, when it rendered its judgment of child support, which granted more than 15 percent in excess of the child support guidelines then in effect, without making a specific finding on the record that the application of the guidelines would be inequitable or inappropriate. He also claimed, as a matter of law, that he was entitled to a modification in accordance with the child support guidelines in effect at the time of his motion because the amount he was paying exceeded the guidelines by more than 15 percent. If the defendant is correct that the dissolution court acted improperly, then the parties' agreement that the child support was nonmodifiable until the husband's income exceeded $900 per week, would not prevail and the opening clause of § 46b-86 (a), "[u]nless and to the extent that the decree precludes modification," would be negated. The trial court then would have the power to modify the support order.

The trial court, *Pittman, J.*, ordered a downward modification retroactive to May 1, 1995, from $325 per week, the figure in the parties' agreement, to $220 per week, the figure that, if modification were proper, was established by the guidelines. The court also found an

overpayment of child support by the defendant of $3885. The trial court noted that the dissolution court, *Mihalakos, J.*, had substantially deviated from the guidelines and had not made a specific finding on the record that the application of the guidelines would be inequitable or inappropriate pursuant to § 2 of Public Acts 1989, No. 89-203, which was subsequently codified as General Statutes § 46b-215b (a). The court based its modification on the fact that the current amounts of child support being paid were not in accordance with the guidelines and that the case of *McHugh* v. *McHugh*, supra, 27 Conn. App. 724, makes it clear that unless the dissolution court explains the statutory deviation, the child support guidelines would govern.

Two statutes, §§ 46b-86 (a) and 46b-215b (a), and their connection with each other, are involved in this appeal. The purpose of both statutes is to assure that children receive adequate financial support from their parents, thereby reducing governmental expenditures for their support. *Turner* v. *Turner*, 219 Conn. 703, 713, 595 A.2d 297 (1991).

"Since 1984, the United States Congress has actively encouraged states to take measures to assure that children receive adequate financial support from their parents, thereby reducing governmental expenditures for support of children. The Child Support Enforcement Amendments of 1984, enacted as Public Law 98-378 and codified at 42 U.S.C. § 666 et seq., amended part D of title IV of the Social Security Act to require that states establish procedures to improve the effectiveness of child support enforcement (IV-D) programs. In those amendments, Congress conditioned the states' receipt of federal funds for [Aid to Families with Dependent Children] programs and for IV-D programs upon compliance with these requirements. Among the requirements was a provision directing states to establish, by law or by judicial or administrative action, guidelines for child

support award amounts that would be available to, but not binding upon, judges who had the authority to enter child support orders. 42 U.S.C. § 667 (a). Such guidelines were intended to provide reliable benchmarks for use in quasi-judicial proceedings, to expedite awards of child support, and to guide courts to more equitable awards in order to address the 'feminization of poverty' resulting from consistent underestimates of the cost of rearing children by increasing the average level of awards. See, e.g., R. D. Thompson & S. F. Paikin, 'Formulas and Guidelines for Support,' 36 Juv. & Fam. Ct. J. 33 (1985).

"Four years later, Congress enacted the Family Support Act of 1988 to increase the responsibility of the states to assist all families, including those who do not receive welfare assistance, to establish, modify and enforce support obligations. Public Law 100-485, codified at 42 U.S.C. § 666 et seq. Section 103 (a) of the 1988 act required the states to create a rebuttable presumption that the amounts recommended in the child support guidelines are the correct amounts to be awarded." *Turner* v. *Turner*, supra, 219 Conn. 713–14.

The first issue we must decide is whether the original trial court properly rendered the orders included in the judgment of dissolution, pursuant to a written agreement of the parties that included a child support provision that deviated from the amount recommended in the guidelines, without any reference to the guidelines. Specifically, we must determine whether the trial court was required to make a specific finding on the record that the application of the guidelines would be inequitable or inappropriate when it rendered the original dissolution decree incorporating the agreement of the parties. The resolution of this issue depends initially on an analysis of the relevant statutes.

On July 31, 1990, the date of the dissolution judgment, Public Act 89-203, § 2, provided: "The child support

guidelines promulgated pursuant to section 8 of public act 85-548 and any updated guidelines issued pursuant to section 1 of this act shall be considered in all determinations of child support amounts within the state. In all such determinations there shall be a rebuttable presumption that the amount of such awards which resulted from the application of such guidelines is the amount of support to be ordered.[7] A specific finding on the record that the application of the guidelines would be inequitable or inappropriate in a particular case, as determined under criteria established by the commission under section 1 of this act, shall be sufficient to rebut the presumption in such case." Public Act 89-203, § 2, took effect October 1, 1989, and was codified as General Statutes § 46b-215b (a) on January 1, 1991. Section 1 of Public Act 89-203 was codified as General Statutes § 46b-215a. See footnote 3.

The language of § 2 of Public Act 89-203 did not *expressly* mandate that a trial court make a specific finding that the application of the guidelines would be inequitable or inappropriate whenever the court entered a child support order that deviated from the guidelines. "General Statutes § 46b-215b (a) does not 'require the trial courts to apply the Guidelines to all determinations of child support, but creates only a rebuttable presumption as to the amount of child support. It requires only that the trial court consider the Guidelines.' " *Draper* v. *Draper*, 40 Conn. App. 570, 572, 672 A.2d 522 (1996). The purpose of the guidelines is to ensure that a parent responsible for child support does not pay *less* than the amounts dictated by the guidelines. *Turner* v. *Turner*, supra, 219 Conn. 713–14.

The presumption of § 1 of Public Act 89-203, now § 46b-215b (a), is one of public policy. See *Turner* v.

---

[7] Section 46b-86 (a), at the time of the judgment of dissolution, did not provide a rebuttable presumption as to a deviation of less or more than 15 percent from the guidelines.

*Turner*, supra, 219 Conn. 703. A trial court need not discuss in its opinion its conclusion that a particular presumption has been rebutted by sufficient counter-vailing evidence, and the failure to do so does not require a reversal if, on appellate review, it is deter-mined that sufficient countervailing evidence did exist. *Anderson* v. *Litchfield*, 4 Conn. App. 24, 28–30, 492 A.2d 210 (1985).

In the present case, the dissolution court specifically found the agreement of the parties, including the amount of child support, to be fair. Also, the court asked each of the parties if they thought the agreement was fair, to which both responded, "Yes." The presump-tion was, in effect, rebutted by the defendant's agreement that he would pay $325 and the court's acqui-escence in that amount was appropriate.

At the time of the dissolution, in July, 1990, the court acted properly in awarding more child support than the guidelines provided. The purpose of the child support guidelines is to provide for the adequate support of children. That purpose would be thwarted if a party could not voluntarily agree to pay *more* than the pre-sumptive amount set by the guidelines as being appro-priate and agreeing that the amount would be nonmodifiable. Legislation should be interpreted ratio-nally to obtain a rational result, a result in lockstep with its legislative purpose. See *State* v. *Valinski*, 53 Conn. App. 23, 30, 731 A.2d 311, cert. granted on other grounds, 249 Conn. 924, 733 A.2d 847 (1999). A judge is presumed to be aware of existing law, here, the exis-tence of child support guidelines. We conclude that no finding was necessary with regard to the presumption of § 2 of Public Act 89-203, now § 46b-215b (a).

The question then becomes whether the holding in *McHugh* is relevant and, if so, whether it should be applied retroactively. Subsequent to the trial court's

rendering the judgment of dissolution in the present case, this court decided the case of *McHugh* v. *McHugh*, supra, 27 Conn. App. 724. In *McHugh*, we interpreted § 46b-215b (a) to require a trial court to make a "specific finding on the record that the application of the guidelines would be inequitable or inappropriate when the amount awarded deviates from the amount resulting from the application of the guidelines, as determined by the application of the deviation criteria established in the guidelines . . . ."[8] Id., 728.

The facts of *McHugh* are dissimilar in many important respects from the facts of the present case. The motion for modification of child support was based on a substantial change in circumstances of the parties rather than a substantial deviation from the amount proscribed by the child support guidelines, the written agreement of the parties was not incorporated by reference into the decree, there was no agreement that the original amount was nonmodifiable and the original award was for unallocated alimony and child support. The trial court ordered a *downward* modification of child support in the amount of $110 per week although the child support guidelines provided child support of $287 per week. The *McHugh* court remanded the case to the trial court for a specific finding as to why the guidelines should be ignored as inequitable or inappropriate. Id., 729. In the present case, the trial court relied on *McHugh* when it granted the defendant's motion for modification based on the dissolution court's failure to make such

___

[8] In *Favrow* v. *Vargas*, 231 Conn. 1, 25, 647 A.2d 731 (1994), our Supreme Court went a step further and held that "a trial court, in deciding that the application of the guidelines would be inequitable or inappropriate in a particular case . . . must first determine on the record the amount of support indicated by the guidelines schedule." The plaintiff, as legal guardian of the two children in that case, sought an order of child support. There was no agreement of nonmodifiability, nor any agreement to pay more than the child support guidelines required, nor any agreement as to the amount required by the guidelines.

a finding on the record. We must decide whether the trial court improperly applied *McHugh* to this case. We conclude that *McHugh* is not relevant to our decision in this case for the primary reason that the amount of child support in our case was agreed to be nonmodifiable at the time of the judgment of dissolution and as such should be treated as a final judgment.

The agreement of the parties executed at the time of the dissolution was incorporated into the judgment and is a contract of the parties. *Issler* v. *Issler*, 250 Conn. 226, 235, 737 A.2d 383 (1999); *Greenburg* v. *Greenburg*, 26 Conn. App. 591, 595, 602 A.2d 1056 (1992). The construction of a contract to ascertain the intent of the parties presents a question of law when the contract or agreement is unambiguous within the four corners of the instrument. *Issler* v. *Issler*, supra, 235. "[T]he construction of a written contract is a question of law for the court." *Gordon* v. *Bridgeport Housing Authority*, 208 Conn. 161, 179, 544 A.2d 1185 (1988); *Sacharko* v. *Center Equities Ltd. Partnership*, 2 Conn. App. 439, 445, 479 A.2d 1219 (1984). The scope of review in such cases is plenary. *Branch* v. *Occhionero*, 239 Conn. 199, 205, 681 A.2d 306 (1996); *Hammond* v. *Commissioner of Correction*, 54 Conn. App. 11, 16, 734 A.2d 571, cert. granted, 251 Conn. 919, 742 A.2d 358 (1999). Because our review is plenary, involving a question of law, our standard for review is not the clearly erroneous standard used to review questions of fact found by a trial court. Our review of the parties' agreement is plenary and does not turn on whether the parties specifically raised the issue of nonmodifiability in the trial court that granted the defendant's motion to modify.

"Once the provisions of a separation agreement . . . are incorporated into the dissolution judgment, they can be modified by court order only if the agreement so incorporated does not preclude modification. . . .

General Statutes § 46b-86 (a) provides in part that '[*u*]*nless and to the extent that the decree precludes modification,* any final order for the periodic payment of permanent alimony or support . . . may at any time thereafter be . . . modified by a showing of a substantial change in the circumstances of either party.' " (Citations omitted; emphasis added.) *Barnard* v. *Barnard,* 214 Conn. 99, 114, 570 A.2d 690 (1990).

Section 46b-86 (a) clearly permits a dissolution court to make nonmodifiable child support awards. See *Vandal* v. *Vandal,* 31 Conn. App. 561, 563, 626 A.2d 784 (1993). "Provisions that preclude modification tend to be disfavored. . . . When a provision in a divorce decree that precludes or restricts a later court's power to modify financial orders is clear and unambiguous, however, that provision will be upheld." (Internal quotation marks omitted.) *Wichman* v. *Wichman,* 49 Conn. App. 529, 535, 714 A.2d 1274, cert. denied, 247 Conn. 910, 719 A.2d 906 (1998). A party to a contract is entitled to rely on its provisions as the final interpretation of that party's rights and duties. *Zullo* v. *Smith,* 179 Conn. 596, 601, 427 A.2d 409 (1980).

In the present case, the separation agreement that was incorporated into the dissolution judgment clearly and unambiguously forecloses modification of the support order unless the defendant earns more than $900 per week. The provision in the decree limits a subsequent trial court's power to modify the support order. Accordingly, the provisions of § 46b-86 (a) relating to the modification of child support awards do not apply. Here, the trial court failed to give effect to the parties' agreement and improperly modified the support order.

Section 46b-86 (a) provides that valid, nonmodifiable portions of dissolution judgments are enforceable and recognizes that "[b]y written agreement, stipulation or by decision of the court, those items or circumstances

that were contemplated and are not to be changed may be specified in the written agreement, stipulation or decision of the court. . . ." The plain language of § 46b-86 (a) also makes clear that if a decree precludes modification, to the extent that it does, no modification may be had. Here, child support in an amount deemed appropriate was agreed upon by the parties, reduced to writing, with a further agreement not to modify that amount until gross wages exceeded a particular amount, and was then approved by the court rendering the judgment of dissolution.

We also conclude that *McHugh* is not relevant to our decision because final judgments cannot be affected by the retroactive application of decisional law. Usually, orders incident to a judgment of dissolution of a marriage concerning support are modifiable, and are not final judgments, immutable to change. If, however, they are unambiguously nonmodifiable, judgments as to those orders should be treated as final judgments.

Judgments rendered in case decisions, which are not limited by their terms to prospective application in other cases, can be applied retroactively, but not to cases in which judgments were already final. *Marone* v. *Waterbury*, 244 Conn. 1, 10–11, 707 A.2d 725 (1998). Decisional law can apply retroactively only to cases that are pending. Id. The judgment of dissolution in this case was not appealed and was final in 1990 long before *McHugh* was decided in 1992. The waiver of alimony and the nonmodifiable child support provisions were final in 1990, and subsequent case law cannot disturb these final judgments.

Even if *McHugh* were relevant, we would not apply it retroactively in this case. The issue of retroactivity of decisional law is a question of policy to be decided by a state's Supreme Court, and may be decided by the policy considerations of whether litigants could be

deemed to have relied on past precedent or whether the "new" resolution of an "old" issue was foreshadowed, or whether equity, given the particular facts, requires a prospective application only. See id.; *Jacque* v. *Steenberg Homes, Inc.*, 209 Wis. 2d 605, 622–25, 563 N.W.2d 154 (1997); *Beavers* v. *Johnson Controls World Services, Inc.*, 118 N.M. 391, 395–98, 881 P.2d 1376 (1994); 5 Am. Jur. 2d, Appellate Review § 790 (1995).[9] In determining whether a decision should be applied retroactively, consideration must be given to whether a retroactive application would produce a substantial, inequitable result. See *Ostrowski* v. *Avery*, 243 Conn. 355, 377–78 n.18, 703 A.2d 117 (1997).

Dissolution actions are equitable in nature and the courts hearing such actions sit as courts of law and equity. *Mitchell* v. *Mitchell*, 194 Conn. 312, 323, 481 A.2d 31 (1984). The defendant did not appeal from the original judgment, claiming that a legal error was made. The plaintiff and the parties' children[10] are entitled to have the benefit of the bargain that the defendant made with the plaintiff. The plaintiff is not free to renegotiate the property division, which the parties settled, and she can no longer claim alimony. If the child support amount had been less, she might well not have waived her right to alimony or might have bargained for a different division of realty and personalty. To allow a downward modification of child support for the children who live with the plaintiff while all other provisions of the parties' agreement remain enforceable would be inequitable.

Our previous decisions would also militate against the retroactive application of *McHugh*. This court was

---

[9] The issue of retroactivity of legislation is an issue different from the retroactivity of decisional law.

[10] We recognize that this case is not brought on behalf of the parties' minor children to delete a nonmodifiable provision of an agreement of the parties that restricted or defeated the children's right of support. See *Guille* v. *Guille*, 196 Conn. 260, 266, 492 A.2d 175 (1985).

confronted with a similar issue in *Cohen* v. *Cohen*, 41 Conn. App. 163, 674 A.2d 869 (1996). That case involved facts similar to those in the present case. In *Cohen*, an agreement of the parties that covered child support of their two minor children was incorporated into the judgment of dissolution. No appeal was taken from the judgment of dissolution. There is no indication that the case involved a nonmodifiable provision for child support. Almost one year later, the plaintiff sought to open the judgment to have retroactive child support orders issued in accordance with the guidelines. The trial court denied the plaintiff's motion, and he appealed. Id., 164.

On appeal, the plaintiff in *Cohen* claimed that although the parties privately had agreed to the amount of child support the plaintiff was required to pay, the trial court improperly failed to consider or make reference to the child support guidelines as required by § 46b-215b (a). Id., 165. This court declined to review the plaintiff's claim and affirmed the judgment of the trial court because the plaintiff failed to provide an adequate record for appellate review. In dicta in a footnote, however, we noted: "The plaintiff relies on *Favrow* v. *Vargas*, 231 Conn. 1, 647 A.2d 731 (1994), to support his argument that the trial court is mandated to make a specific finding on the record of the amount of child support required by the guidelines. *Favrow*, however, was not decided until after the dissolution in this case and we will not apply *Favrow* retroactively in these circumstances. See *Draper* v. *Draper*, [supra, 40 Conn. App. 570]. . . . The plaintiff's reliance on *McHugh* v. *McHugh*, [supra, 27 Conn. App. 724], is misplaced for the same reasons." *Cohen* v. *Cohen*, supra, 41 Conn. App. 167 n.4.

Similarly, in *Draper* v. *Draper*, supra, 40 Conn. App. 573, the defendant claimed that the trial court improperly failed to make a specific finding on the record

of the amount of the child support required by the guidelines before deciding whether and to what extent the award should deviate therefrom as mandated by *Favrow* v. *Vargas*, supra, 231 Conn. 25–29. On appeal, this court held: "We first note that the defendant's reliance on *Favrow* is misplaced. *Favrow*'s requirement that a specific finding of the amount of support required by the child support guidelines must be made on the record was not established until 1994, when that case was decided. The present case preceded *Favrow*, and we will not apply *Favrow* retroactively in these circumstances." *Draper* v. *Draper*, supra, 573. Although *Draper* concerned the retroactive application of *Favrow*, the logic and reasoning of it applies equally to the issue in the present case regarding *McHugh*.

The defendant urges this court to determine that the trial court properly applied *McHugh* retroactively. We decline to do so. The defendant has failed to present to this court any authority to support its position. The cases relied on by the defendant are factually dissimilar to the present one.[11] At the time the judgment of dissolution was rendered, the dissolution court was not required to make a specific finding on the record concerning the applicability of the guidelines and properly rendered judgment in accordance with the parties' agreement, after finding it to be fair and equitable. We would not apply *McHugh* retroactively to require such a specific finding.

We conclude that the court should not have modified the amount of child support payable by the defendant.

---

[11] The cases relied on by the defendant do not concern an original judgment of dissolution that incorporated an agreement of the parties providing for nonmodifiable child support that deviated from the guidelines rendered without any reference to the guidelines, but, rather, child support orders entered subsequent to the *McHugh* decision by a trial court while entertaining a party's motion for modification of the original order. See *Baker* v. *Baker*, 47 Conn. App. 672, 707 A.2d 300 (1998); *Castro* v. *Castro*, 31 Conn. App. 761, 627 A.2d 452 (1993).

The judgment is reversed and the case is remanded with direction to deny the motion to modify.

In this opinion O'CONNELL, C. J., and FOTI, LAVERY, LANDAU, SCHALLER and SPEAR, Js., concurred.

VERTEFEUILLE, J., with whom HENNESSY, J., joins, dissenting. I respectfully disagree with the majority's conclusion that the trial court improperly exercised its authority under General Statutes (Rev. to 1999) § 46b-86 (a)[1] and improperly applied *McHugh* v. *McHugh*, 27 Conn. App. 724, 609 A.2d 250 (1992). I also disagree with the majority's conclusion that the child support order in question was nonmodifiable, and I would decline to decide the issue because it was neither raised nor decided by the trial court. Accordingly, I respectfully dissent.

Our scope of review in appeals from family relations decisions is limited. "The well settled standard of review in domestic relations cases is that this court will not disturb trial court orders unless the trial court has abused its legal discretion or its findings have no reason-

---

[1] General Statutes (Rev. to 1999) § 46b-86 (a) provides in relevant part: "Unless and to the extent that the decree precludes modification, any final order for the periodic payment of permanent alimony or support or an order for alimony or support pendente lite may at any time thereafter be continued, set aside, altered or modified by said court upon a showing of a substantial change in the circumstances of either party or upon a showing that the final order for child support substantially deviates from the child support guidelines established pursuant to section 46b-215a, unless there was a specific finding on the record that the application of the guidelines would be inequitable or inappropriate. There shall be a rebuttable presumption that any deviation of less than fifteen per cent from the child support guidelines is not substantial and any deviation of fifteen per cent or more from the guidelines is substantial. Modification may be made of such support order without regard to whether the order was issued before, on or after May 9, 1991. In determining whether to modify a child support order based on a substantial deviation from such child support guidelines the court shall consider the division of real and personal property between the parties set forth in the final decree and the benefits accruing to the child as the result of such division. . . ."

able basis in the facts. . . . *Gallo* v. *Gallo*, 184 Conn. 36, 50, 440 A.2d 782 (1981). . . . In determining whether there has been an abuse of discretion, the ultimate issue is whether the court could reasonably have concluded as it did." (Citations omitted; internal quotation marks omitted.) *Turner* v. *Turner*, 219 Conn. 703, 708–709, 595 A.2d 297 (1991).

I do not take issue with the facts as stated by the majority. I believe, however, that the following additional facts are important to an understanding of the issues in this case. In 1990, when the dissolution judgment was entered, both parties were represented by counsel, neither of whom informed the trial court that the child support in the amount of $325 to which they had agreed deviated substantially from the amount called for in the child support guidelines (guidelines). The trial court was not aware of the deviation from the guidelines and, therefore, made no finding with respect to the deviation. See General Statutes (Rev. to 1989) § 46b-86 (a), as amended by Public Acts 1990, No. 90-213, § 46.[2]

The guidelines set forth the total weekly amount that is necessary for the support of a child or children, which is called the "basic obligation." The responsibility for payment of the basic obligation is determined through

[2] General Statutes (Rev. to 1989) § 46b-86 (a), as amended by Public Acts 1990, No. 90-213, § 46, provides: "Unless and to the extent that the decree precludes modification, any final order for the periodic payment of permanent alimony or support or an order for alimony or support pendente lite may at any time thereafter be continued, set aside, altered or modified by said court upon a showing of a substantial change in the circumstances of either party. After the date of judgment, modification of any child support order issued before or after [July 1, 1990] may be made upon a showing of such substantial change of circumstances, whether or not such change of circumstances was contemplated at the time of dissolution. By written agreement, stipulation or by decision of the court, those items or circumstances that were contemplated and are not to be changed may be specified in the written agreement, stipulation or decision of the court. This section shall not apply to assignments under section 46b-81 or to any assignment of the estate or a portion thereof of one party to the other party under prior law."

the use of a worksheet that allocates the obligation between the mother and the father on the basis of their respective incomes. See Regs., Conn. State Agencies § 46b-215a-2. At the time of the hearing on the motion to modify child support in the present case in 1996, the basic obligation under the guidelines for the children in this case was $305. In 1990, when the original support order entered, the plaintiff was not employed outside her home, and her share of the basic obligation was zero. In 1996, however, the plaintiff was employed outside her home, and her share of the support obligation was calculated to be $85 per week. The defendant's share of the support, therefore, was reduced to $220.

My analysis of the propriety of the trial court's order modifying the child support payable by the defendant begins with the applicable statute. Section 46b-86 (a) permits the court to modify child support orders in two alternative circumstances. The first, which is not at issue in the present case, is "upon a showing of a substantial change in the circumstances of either party . . . ." General Statutes § 46b-86 (a). The second is "upon a showing that the final order for child support substantially deviates from the child support guidelines established pursuant to section 46b-215a, *unless there was a specific finding on the record that the application of the guidelines would be inequitable or inappropriate.* . . ." (Emphasis added.) General Statutes § 46b-86 (a). Under this second ground, a child support order is modifiable if it substantially deviates from the guidelines and there was no finding by the court that entered the order that the application of the guidelines would be inequitable or inappropriate. There is no dispute that the defendant in the present case moved to modify his child support obligation on the basis of this second ground of the statute.

The second ground was added to § 46b-86 (a) in 1990 and did not take effect until after the date of the dissolu-

tion judgment. Public Acts 1990, No. 90-188, § 1. Soon after the statute took effect, our Supreme Court was asked to determine whether the new ground for modification applied retroactively to child support orders not conforming to the guidelines that were entered before the effective date of the amended statute. *Turner* v. *Turner*, supra, 219 Conn. 703. The Supreme Court held that the statute did apply to nonconforming support orders entered before the statute was adopted, concluding that the statute "allows the court to modify child support orders that were once deemed appropriate but no longer seem equitable in the light of changed social or economic circumstances in the society as a whole, as reflected in the mandatory periodic revisions of the child support guidelines." Id., 718.

Approximately one year after *Turner*, this court decided *McHugh* v. *McHugh*, supra, 27 Conn. App. 724. The issue in *McHugh* was whether the trial court properly granted a motion to modify child support when it entered an order for support in the amount of $110 per week, despite the fact that the guidelines called for an order of $287 and without making any finding with respect to the deviation. We began our analysis in *McHugh* with General Statutes § 46b-215b, which requires that the guidelines be considered in all determinations of child support amounts, including modifications. We next noted that § 46b-215b creates a rebuttable presumption that the amount of child support to be ordered by the court is the amount resulting from the guidelines unless there is a specific finding on the record that the guidelines amount would be inequitable or inappropriate. We then acknowledged the 1990 amendment to § 46b-86 (a), which permitted modification to conform to the guidelines, and our Supreme Court's holding in *Turner* that the amendment applies retroactively to nonconforming support orders previously entered. In light of the two statutory provi-

sions, §§ 46b-215b and 46b-86 (a), and the holding in *Turner*, we concluded, "[i]t follows, therefore, that once the court enters an order of child support that substantially deviates from the guidelines, and makes a specific finding that the application of the amount contained in the guidelines would be inequitable or inappropriate, as determined by the application of the deviation criteria established in the guidelines, that particular order is no longer modifiable solely on the ground that it substantially deviates from the guidelines. *By the same token, in the absence of such a specific finding, the order is continually subject to modification on the ground of a substantial deviation from the guidelines.*" (Emphasis added.) Id., 728–29. Because the trial court in *McHugh* deviated from the guidelines without making the necessary finding, we reversed the judgment of the trial court and remanded the case for a new hearing. Id., 729.

The reasoning of *McHugh* is cogent and the conclusion in the case was compelled by application of the express provisions of the two applicable statutes, §§ 46b-215b and 46b-86 (a), together with the retroactivity holding in *Turner*. I would conclude that the trial court in the present case properly applied the reasoning from *McHugh* in granting the defendant's motion to modify. The trial court determined that the 1990 child support order was a substantial deviation from the guidelines and that the necessary finding supporting deviation was not made. Therefore, the trial court found that the support order was modifiable to conform to the guidelines.

The majority distinguishes *McHugh* on its facts and refuses to apply it retroactively. I am not persuaded by the factual distinctions, and I conclude that whether *McHugh* is applied retroactively or not, our reasoning in that case, based as it was on the express provisions of the two statutes and the holding of our Supreme Court in *Turner*, is inescapable. In refusing to make

*McHugh* retroactive, the majority relies on our refusal in *Draper* v. *Draper*, 40 Conn. App. 570, 672 A.2d 522 (1996), to make retroactive our Supreme Court's decision in *Favrow* v. *Vargas*, 231 Conn. 1, 647 A.2d 731 (1994). The decision in *Favrow*, however, which required the trial court to make a finding on the record of the presumptively correct support amount under the guidelines before finding it inequitable or inappropriate, was based on the court's construction of § 46b-215b, not on any of the clear, express provisions of the statute. I conclude that the trial court properly applied our reasoning from *McHugh* and properly exercised its authority under § 46b-86 (a) in granting the defendant's motion to modify.

I would reverse the decision of the trial court, however, because of the court's failure to consider two factors required by statute. Section 46b-86 (a) provides in relevant part that "[i]n determining whether to modify a child support order based on a substantial deviation from such child support guidelines the court shall consider the division of real and personal property between the parties set forth in the final decree and the benefits accruing to the child as the result of such division. . . ." There is no evidence in the record that the trial court considered these factors. I would, therefore, reverse the judgment of the trial court and remand this case for further hearing limited to a consideration of these statutory factors.

Finally, I respectfully dissent from the majority's conclusion that the 1990 child support order was nonmodifiable. I would decline to reach this issue. A review of the transcript of the hearing on the motion to modify demonstrates that the plaintiff did not claim that the child support amount was nonmodifiable. Although the plaintiff made reference to the provision in the agreement that stated that any future modification of child support should be based on an increase in the

defendant's wages to an amount exceeding $900 per week, she never argued that the support order was nonmodifiable. The plaintiff claimed that the agreement between the parties was a binding contract with many interdependent elements and that the court, therefore, should not vary the child support amount. Because the issue of nonmodifiability was not raised, the trial court made no finding with respect to the modifiability of the child support amount. We do not consider issues that were neither raised nor decided in the trial court. Practice Book § 60-5; *State* v. *Vasquez,* 9 Conn. App. 648, 653, 520 A.2d 1294, cert. denied, 203 Conn. 808, 525 A.2d 523 (1987). I, therefore, disagree with the majority's conclusion that the child support order in the parties' agreement was nonmodifiable.

Accordingly, I dissent.