ALLYSON J. ZITNAY *v.* JUSTYN F. ZITNAY
(AC 25668)

Lavery, C. J., and Schaller and Peters, Js.

Argued March 22—officially released July 5, 2005

*Justyn F. Zitnay*, pro se, the appellant (defendant).

*James D. Hirschfield*, for the appellee (plaintiff).

*Opinion*

PETERS, J. In this appeal from the modification of a child support order, the principal issue is whether the trial court's authority was constrained by a provision in a comprehensive shared parenting plan that was incorporated into the parties' dissolution decree. In that plan, the parents agreed that neither parent's home would serve as the children's primary residence. The trial court nonetheless granted the mother's motion for modification designating her as the children's primary custodian because, despite the parenting plan, the mother had in fact assumed the major role in taking responsibility for the children and her home had become the children's primary residence. The father argues that the court's support order was improper. We affirm the judgment of the trial court.

The marriage of the defendant father, Justyn F. Zitnay, and the plaintiff mother, Allyson J. Zitnay, was

dissolved on November 6, 2002. On that date, with one exception, the parties adopted a shared parenting plan as recommended by the family services unit of the judicial branch. They disagreed with the recommendation that the mother should become the children's custodial parent. Instead, they agreed that "[n]either parent's home shall be designated a primary residence."

After two earlier child support orders, neither of which the father contested by way of an appeal, the father filed a motion to reduce his support payments because his present wages were less than what he had been earning at the time of the dissolution of the marriage. In response, the mother filed a motion for upward modification of child support based on the father's return to gainful employment.[1] She also requested that she be designated as the children's primary residential custodian. Over the father's objection, the trial court, *Brunetti, J.*, found that she was indeed the children's primary custodian and awarded her $110 per week.

In response to the father's motion for articulation, the trial court observed that, in accordance with § 46b-215a-3 (6)[2] of the Regulations of Connecticut State Agencies, as a matter of law, adoption of a shared parenting plan authorized an order of child support that

---

[1] Initially, the trial court, *DiPentima, J.*, had ordered the father to pay $157 per week in child support. Thereafter, when the father was discharged from employment, the court, *Walsh, J.*, reduced the father's child support obligation to $100 per week.

[2] Section 46b-215a-3 (6) of the Regulations of Connecticut State Agencies provides in relevant part: "In some cases, there may be special circumstances not otherwise addressed in this section in which deviation from presumptive support amounts may be warranted for reasons of equity. Following are such circumstances:

"(A) Shared physical custody. When a shared physical custody arrangement exists, deviation is warranted only when: (i) Such arrangement substantially reduces the custodial parent's, or substantially increases the noncustodial parent's, expenses for the child; and (ii) Sufficient funds remain for the parent receiving support to meet the basic needs of the child after deviation. . . ."

deviated from the child support guidelines, Regulations of Connecticut State Agencies § 46b-215a-1 et seq. The support guidelines presumptively govern child support orders. General Statutes § 46b-215b;[3] *Marrocco* v. *Giardino*, 255 Conn. 617, 625, 767 A.2d 720 (2001). In *Weinstein* v. *Weinstein*, 87 Conn. App. 699, 701, 267 A.2d 111, cert. granted on other grounds, 273 Conn. 934, 875 A.2d 545 (2005),[4] we held, however, that "the amount of support to which the parties had agreed represented an acceptable deviation from the guidelines because the parties equally shared physical custody of their child."

In deciding the amount of child support to award in this case, the court relied on the support guidelines, the evidence submitted by the parents, including their financial affidavits, and a time schedule prepared by the mother. In light of that schedule, the court found the

---

[3] General Statutes § 46b-215b provides in relevant part: "(a) The child support and arrearage guidelines promulgated pursuant to section 8 of public act 85-548 and any updated guidelines issued pursuant to section 46b-215a shall be considered in all determinations of child support amounts and payment on arrearages and past due support within the state. In all such determinations, there shall be a rebuttable presumption that the amount of such awards which resulted from the application of such guidelines is the amount of support or payment on any arrearage or past due support to be ordered. A specific finding on the record that the application of the guidelines would be inequitable or inappropriate in a particular case, as determined under criteria established by the Commission for Child Support Guidelines under section 46b-215a, shall be required in order to rebut the presumption in such case. . . .

"(c) In any proceeding for the establishment or modification of a child support award, the child support guidelines shall be considered in addition to and not in lieu of the criteria for such awards established in sections 46b-84, 46b-86, 46b-130, 46b-171, 46b-172, 46b-215, 17b-179 and 17b-745." The statute has been implemented by the support guidelines set forth in § 46b-215a-3 (6) of the Regulations of Connecticut State Agencies.

[4] The Supreme Court granted certification to appeal on the question of whether this court properly reversed "the trial court's judgment on the basis that the trial court had improperly imputed an amount of investment income to the defendant." *Weinstein* v. *Weinstein*, 273 Conn. 934, 875 A.2d 545 (2005).

mother to have assumed the role of "custodial parent" because she "had responsibility for the child[ren] approximately 60 to 70 percent of the time." The court ordered the father to pay $110 weekly as child support.

In his appeal to this court, the father has raised three issues. He maintains that (1) the shared parenting plan manifested the parents' agreement that neither parent would ever have primary custody of their children, (2) the court impermissibly deviated from the support guidelines because the mother did not satisfy the definition of a custodial parent under the guidelines, and (3) the parents' incomes and their shared parenting responsibilities were approximately equal. We are not persuaded.

I

In his first and principal claim, the father contends that the court should not have awarded *any* child support to the mother because, in their shared parenting plan, the parents had agreed that neither parent would have primary custody of their children. It is undisputed that, once the shared parenting plan was incorporated into the dissolution judgment, it became an enforceable contract. See *Issler* v. *Issler*, 250 Conn. 226, 235, 737 A.2d 383 (1999); *Amodio* v. *Amodio*, 56 Conn. App. 459, 470, 743 A.2d 1135, cert. granted on other grounds, 253 Conn. 910, 754 A.2d 160 (2000) (appeal withdrawn September 27, 2000). In the absence of a claim that the terms of the plan are ambiguous, the proper construction of these terms is a question of law; *Issler* v. *Issler*, supra, 235; and our review of the judgment of the trial court is plenary. *Amodio* v. *Amodio*, supra, 470.

A

To understand the father's claim about the consequences of the parents' adoption of a shared parenting plan, we need to examine the kinds of shared parenting

arrangements to which parents may agree upon the dissolution of their marriage as a matter of law. Although the law in other states has authorized a variety of shared parenting plans,[5] our legislature expressly has recognized only two arrangements for the sharing of parental rights and obligations.[6] Section 46b-215a-1 (22) of the Regulations of Connecticut State Agencies, which defines "shared physical custody," and General Statutes § 46b-56a (a), which defines "joint custody," together authorize the shared parenting plan to which the parents agreed in this case.

Section 46b-215a-1 (22) defines "shared physical custody" as "a situation in which the noncustodial parent exercises visitation or physical care and control of the child for periods substantially in excess of a normal visitation schedule. . . ." A "typical visitation schedule" consists of "two overnights on alternate weekends; alternate holidays; some vacation time; and other visits of short duration, which may occasion an overnight stay during the week." Child Support and Arrearage Guidelines (1999) preamble, § (h) (4), p. viii. Notably, § 46b-215a-1 (22) expressly provides that "*equal* sharing of physical care and control of the child is *not required* for a finding of shared physical custody." (Emphasis

[5] For a discussion of the various ways in which different states have addressed the issue of shared parenting, see generally M. Melli, "Guideline Review: Child Support and Time Sharing by Parents," 33 Fam. L.Q. 219 (1999); L. Morgan, "Child Support Guidelines and the Shared Custody Dilemma," 10 Divorce Litigation 213 (1998); see also A. Rutkin, Family Law & Practice (2004) §§ 33.05 [8], 33.09; L. Morgan, Child Support Guidelines: Interpretation and Application (Sup. 2001) § 3.03. For a discussion of the most commonly used methods of calculating child support and the challenges posed by shared parenting arrangements, see generally J. Beld & L. Biernat, "Federal Intent for State Child Support Guidelines: Income Shares, Cost Shares, and the Realities of Shared Parenting," 37 Fam. L.Q. 165 (2003).

[6] Under the circumstances of this case, we need not decide whether, in enacting these statutes, the legislature intended to restrict authorized deviations from the support guidelines to the arrangements described therein.

added.) Here, although this regulation did not require the parents to do so, their agreement contemplated the equal sharing of physical care and control of their children.

General Statutes § 46b-56a (a) defines joint custody as "an order awarding legal custody of the minor child to both parents, providing for joint decision-making by the parents and providing that physical custody shall be shared by the parents in such a way as to assure the child of continuing contact with both parents. The court may award joint legal custody *without awarding joint physical custody* where the parents have agreed to merely joint legal custody." (Emphasis added.) Joint legal custody involves equal sharing of decisions regarding a child's welfare, such as education, religious instruction and medical care. See *Emerick* v. *Emerick*, 5 Conn. App. 649, 656–57, 502 A.2d 933 (1985), cert. dismissed, 200 Conn. 804, 510 A.2d 192 (1986). Here again, the parents opted for joint legal custody *and* joint physical custody, which this statute did not require.

There can be, therefore, no doubt that, as a matter of law, the shared parenting plan to which the parents agreed in this case authorized the trial court's decision to deviate from the established support guidelines. Regs., Conn. State Agencies § 46b-215a-3 (6). The father has not argued to the contrary.

B

The father claims that the court's support order nonetheless was improper because it was inconsistent with the broad based sharing of responsibilities contemplated in the shared parenting agreement. He emphasizes that the agreement provided, unambiguously, that neither party's home would be the children's primary residence. The inferences to be drawn from this agreement raise questions of law over which our review is plenary. *Issler* v. *Issler*, supra, 250 Conn. 235; *Amodio*

v. *Amodio,* supra, 56 Conn. App. 470. We disagree with the father's assumption that the terms of the shared parenting plan implicitly precluded future modification of these terms.

The father misunderstands the relationship between an initial support order and a motion for the modification of a support order. In its initial order, a court must consider all of the evidence, including the deviation criteria, the operative impact of a parenting arrangement and the respective incomes of the parties. See General Statutes § 46b-215b. That order is not, however, sacrosanct. If there has been a substantial change of circumstances,[7] General Statutes § 46b-86 (a)[8] authorizes a court to modify the terms of a dissolution agreement, including its provision for custodial and financial arrangements. See *Turner* v. *Turner,* 219 Conn. 703, 718, 595 A.2d 297 (1991); *Lucas* v. *Lucas,* 88 Conn. App. 246, 251, 869 A.2d 239 (2005).[9]

[7] The father does not contest the court's implicit finding that a substantial change occurred in the financial status of the parties since a June 11, 2003 modification order. In that order, the court reduced the father's child support obligations to $100 per week to reflect his discharge from employment. The father did not challenge the amount of that award or the court's authority to order a modification of his support obligations. The father is now employed.

[8] General Statutes § 46b-86 (a) provides in relevant part: "Unless and to the extent that the decree precludes modification . . . any final order for the periodic payment of permanent alimony or support or an order for alimony or support pendente lite may at any time thereafter be continued, set aside, altered or modified . . . upon a showing of a substantial change in the circumstances of either party. . . . After the date of judgment, modification of any child support order issued before or after July 1, 1990, may be made upon a showing of such substantial change of circumstances, whether or not such change of circumstances was contemplated at the time of dissolution. By written agreement, stipulation or by decision of the court, those items or circumstances that were contemplated and are not to be changed may be specified in the written agreement, stipulation or decision of the court. . . ."

[9] The fact that the dissolution agreement was incorporated into a dissolution decree does not deprive the court of authority to modify a support agreement that does not expressly preclude modification. See, e.g., *Barnard* v. *Barnard,* 214 Conn. 99, 114, 570 A.2d 690 (1990).

The terms of the shared parenting agreement in this case did not include a provision precluding modification of the child support to which the parents had agreed. That option was available to them.[10] We decline to interpolate a preclusionary term into the shared parenting agreement to which they subscribed.

In sum, in its authorization of various agreements for sharing of parental authority after the dissolution of a marriage, the legislature has given parents considerable latitude to craft the arrangements that best suit their family. The legislature has not, however, made such arrangements nonmodifiable. If, as in this case, the parents do not themselves make their shared parenting plan nonmodifiable, General Statutes § 46b-86 (a) authorizes a trial court to issue a modified support order that reflects a substantial change in the parents' circumstances. We conclude, therefore, as a matter of law, that the terms of the parties' parenting agreement did not preclude the court from modifying the agreement in light of its finding that a substantial change in circumstances had occurred.

II

The trial court based its decision to order the father to pay $110 in child support on the factual representations of the parents and the documentation they had prepared for the court. It found that "the evidence [showed that the mother] who is the custodial parent had responsibility for the child[ren] approximately 60 to 70 percent of the time." In the father's challenge to this order, he claims that the court erroneously found that (1) the mother was a "custodial parent" as that

---

[10] In *Amodio* v. *Amodio*, supra, 56 Conn. App. 471–72, we held that a trial court may not modify the terms of a separation agreement that previously was incorporated into a dissolution judgment if the agreement expressly provides that its terms are not modifiable.

term is defined in § 46b-215a-1 (8)[11] of the Regulations of Connecticut State Agencies and (2) the disparity in the parents' income was sufficient to warrant a modification of the support order. The viability of these claims of factual error depends on a showing that the court's findings were clearly erroneous. Practice Book § 60-5; see also *Pandolphe's Auto Parts, Inc.* v. *Manchester*, 181 Conn. 217, 221–22, 435 A.2d 24 (1980). The record does not substantiate the father's claims.

Our consideration of any claim of factual error starts with an examination of the court record. In this case, the record is most notable for what it does not contain. Except for a reproduction of the terms of the shared parenting agreement, we have nothing other than a copy of the court's articulation of its order and a transcript of the testimony presented at the hearing on the modification motions. We have not been provided with any exhibits. The transcript indicates that only the parents testified at the hearing. A detailed schedule documenting the mother's daily custodial responsibilities[12] is not before us. At the hearing, the father did not challenge the accuracy of this schedule, but relied instead on a biweekly custodial plan that was part of the original shared parenting plan[13] as a basis for his otherwise

---

[11] Section 46b-215a-1 (8) of the Regulations of Connecticut State Agencies provides that " 'Custodial parent' means the parent who provides the child's primary residence."

[12] The mother testified that she cared for the children 72 percent of the time.

[13] Significantly, the biweekly custodial plan was an integral part of the family services' recommendation that the mother serve as the *primary* custodian of the parties' children. The schedule provided that, in week one, "Father will have parenting time with [the boys] Sunday through Wednesday morning except for Monday from 4 pm until 7:30 pm when mother will have the boys. Mother will have parenting time Wednesday after school through Saturday overnight." It further provided that in week two, "Mother will have parenting time with [the boys] through Thursday morning except for Tuesday from 4:00 pm through 7:30 pm when father will have the boys. Father will also have parenting time Thursday after school through Saturday overnight."

unarticulated contention that the mother had custody only 52 percent of the time.

On this state of the record, the father's factual arguments are misguided. Although the father's motion for articulation asked the trial judge "to explain how he arrived at the decision [in this case]," the articulation did not put on the record the factual basis of the court's order, and the father made no further inquiry. It is axiomatic that, in a court hearing, the trial court determines the credibility of the witnesses. *Szczerkowski* v. *Karmelowicz*, 60 Conn. App. 429, 434, 759 A.2d 1050 (2000). The mother's testimony supported the court's finding that she had become the children's custodial parent for more than half the time.[14]

In the father's other factual arguments, he questions the amount of the child support order that the court ordered him to pay. He asks us to find that (1) the parents' incomes were approximately equal and (2) if he is required to comply with the court's order, he will lack the financial capacity to meet the basic needs of the children. Because the trial court made no findings with respect to these factual claims, we cannot address their merits. As an appellate court, we do not make findings of fact. *State* v. *Pagan*, 75 Conn. App. 423, 431, 816 A.2d 635, cert. denied, 265 Conn. 901, 829 A.2d 420 (2003).

The judgment is affirmed.

In this opinion the other judges concurred.

---

[14] The mother testified that during summer, the children are awake from 8 a.m. until 8 p.m., which means that she has responsibility for the children 72 percent of the time over a two week period. She also testified that, in the course of one week, she provides the children with fourteen meals, whereas the father provides seven. Finally, the mother testified that she is responsible for transporting the children to and from school.