## JULIE WAY *v.* BRYAN WAY
## (AC 17974)

Schaller, Zarella and Pellegrino, Js.

Argued May 31—officially released October 3, 2000

*Stephen E. Reck*, for the appellant (plaintiff).

*Raymond L. Baribeault, Jr.*, with whom, on the brief, was *Jeffrey W. Hill*, for the appellee (defendant).

*Opinion*

PELLEGRINO, J. In this marriage dissolution action, the plaintiff, Julie Way, appeals from the judgment of

the trial court granting the motion of the defendant, Bryan Way, to open and modify the original dissolution decree for the purpose of reducing her household support. On appeal, the plaintiff claims that the court (1) lacked jurisdiction to open and modify the judgment pursuant to General Statutes § 52-212a because the defendant did not file his motion within four months following the date on which the judgment was rendered, (2) even if it had jurisdiction, improperly determined that the award of household support was not legally enforceable and (3) improperly considered the defendant's pro se status in terminating the award. We conclude that the plaintiff failed to preserve the first claim for appellate review. We agree with her second claim, reverse the judgment of the trial court on that ground and therefore do not reach the third claim.

The relevant facts are as follows. The court dissolved the parties' marriage on September 25, 1996, after an uncontested hearing in which only the plaintiff was represented by counsel. The final dissolution decree incorporated the terms of a written separation agreement, negotiated by the parties but drafted by the plaintiff's attorney, concerning alimony, disposition of property and the custody, care, education, visitation, maintenance and support of the three minor children.[1] The agreement provided, inter alia, that the plaintiff would receive 80 percent or more of the parties' assets, including the marital home, that the children would reside with the plaintiff, subject to reasonable visitation

---

[1] The judgment states: "The parties hereto have submitted a written agreement dated September 25, 1996, concerning the custody, care, education, visitation, maintenance, support of their minor children, alimony, and the disposition of their property, which agreement the court finds to be fair and equitable, and which agreement has been approved and made part of the court file." All provisions in the agreement relating to custody and visitation, child support, health insurance, household support to wife, pension and investments, tax exemptions, life insurance, family residence, bank accounts and college tuition were repeated nearly verbatim in the judgment.

by the defendant, and that the defendant would pay to the plaintiff child support in the amount of $345 per week in accordance with state child support guidelines. Paragraph seven of the separation agreement, entitled "Household Support to Wife,"[2] further states that there would be no award of periodic alimony to either party and required the defendant to contribute $260 per week toward the plaintiff's household expenses for a period of five years. The order was nonmodifiable as to duration or amount, and was nontaxable to the plaintiff and nondeductible by the defendant.

The parties operated under the terms of the judgment until July, 1997, when the defendant was laid off by his employer. His average annual earnings had been $65,000 to $70,000 at the time of the dissolution, but his new job paid $15 hourly, which meant that he earned approximately one-half of his prior income. As a result of his changed employment, the defendant advised the plaintiff that he was reducing his $605 weekly obligation of combined child ($345) and household ($260) support to $376 per week.

[2] All future references to paragraph seven are to its terms as incorporated into the judgment of dissolution, unless otherwise noted.

Paragraph seven states: "Each party waives and relinquishes any claim to periodic alimony from the other.

"The husband shall contribute the sum of two hundred sixty dollars ($260.00) per week toward the wife's household expenses for a period of five years.

"This agreement is made in contemplation of the serious illness of the parties' minor child and the need for the wife to be available to him, and the impediment, thereafter, to her gainful employment. However, it is expressly agreed that said order of contribution is nonmodifiable as to duration or amount and is nontaxable to the wife, nor deductible by the husband.

"The payment of household expenses shall not be discharged in bankruptcy, and husband shall reaffirm said indemnification to wife in the event of involuntary discharge.

"The wife agrees that she shall commence studies toward achieving her master's degree within a reasonable time after the entry of judgment of the dissolution of marriage and shall continue with those independent studies until the degree is completed."

In October, 1997, the plaintiff served the defendant with a contempt citation, seeking the difference between the court-ordered $605 weekly financial obligation and the defendant's weekly payment of $376. The defendant responded by filing a motion for modification in November, 1997, claiming a substantial change of circumstances and questioning the meaning of paragraph seven. In his motion, the defendant claimed that the $260 per week in household support was, in effect, a form of child support and, when considered from that perspective, his weekly support obligation of $605 deviated more than 15 percent above the child support guidelines. He therefore requested that the court (1) clarify that the award of household support was intended to be additional child support, and (2) modify and reduce his financial obligation to a total of $376 per week. Thereafter, a two day hearing was conducted, with both parties testifying as to their respective understandings of paragraph seven.[3]

On December 18, 1997, the court rendered judgment from the bench, granting the defendant's motion.[4] The court stated that it found the provisions in paragraph seven "contradictory and confusing," and never before had encountered such provisions in a separation agreement. The court concluded that the disputed household support could not be considered alimony, which the parties had expressly waived, and could not be considered a property settlement, since the dissolution decree had allocated most, if not all, of the parties' assets to the plaintiff. The court also stated that the pro se defendant might not have understood the meaning of the phrase "nonmodifiable as to duration and amount." The court further stated that "[t]he transcript of the final hearing revealed . . . an inadequate canvass of

---

[3] Each party was represented by counsel.

[4] The plaintiff withdrew her request for a contempt citation at the December 18, 1997 hearing.

the defendant and also lax description of the terms of the agreement itself." The court finally stated that "[t]he agreement . . . is void of any section which would indicate that the defendant was given an opportunity to have it reviewed by counsel prior to signing it, which is a provision which I certainly included in any separation agreement I ever drafted with a pro se. . . .

"I think the drafter [plaintiff] will have to bear the burden in this case for not assuring this court that the defendant understood the implications that the plaintiff would like this court to believe the defendant understood." The court then determined that paragraph seven, as incorporated into the judgment of dissolution, was not legally enforceable due to its ambiguity, ordered the defendant to pay to the plaintiff an arrearage of $5,476.28 and, with the plaintiff's concurrence, reduced the defendant's child support obligation to $270 per week. This appeal of the court's determination that the household support provision was not legally enforceable followed. The plaintiff subsequently requested, and this court ordered, that the trial court articulate its decision to modify the judgment of dissolution.[5]

I

The plaintiff first claims that the court lacked jurisdiction to open and modify the judgment of dissolution because the defendant's motion was filed more than four months after the decree was entered.[6] Because the

---

[5] The articulation reflected the previously discussed statements by the court during the December, 1997 hearing.

[6] The plaintiff incorrectly characterizes the timeliness claim as jurisdictional. In *Kim* v. *Magnotta*, 249 Conn. 94, 101, 733 A.2d 809 (1999), our Supreme Court held that the four month limitation imposed by § 52-212a does not implicate the court's subject matter jurisdiction. Finding the concept of personal jurisdiction inapplicable as well, the court concluded that "[t]he better construction of the statute is to characterize it as a limitation on the trial court's general authority to grant relief from a judgment . . . ." Id., 102. Although claims implicating the court's subject matter jurisdiction may be raised at any time, whether or not raised at trial; *Taft* v. *Wheelabrator*

defendant failed to raise the issue of timeliness in the trial court, we are not bound to review this claim. See Practice Book § 60-5; *Burnham* v. *Karl & Gelb, P.C.*, 252 Conn. 153, 170, 745 A.2d 178 (2000). We note, nonetheless, that this argument has no merit.

General Statutes § 52-212a provides in relevant part: "Unless otherwise provided by law and *except in such cases in which the court has continuing jurisdiction*, a civil judgment . . . may not be opened or set aside unless a motion to open or set aside is filed within four months following the date on which it was rendered or passed. . . ." (Emphasis added.) See Practice Book § 17-4. Under General Statutes § 46b-86 (a), the trial court retains continuing jurisdiction, except where precluded by the decree, to modify orders concerning alimony or support. *Bunche* v. *Bunche*, 180 Conn. 285, 288, 429 A.2d 874 (1980); *Croke* v. *Croke*, 4 Conn. App. 663, 664, 496 A.2d 235 (1985). When a decree contains language precluding modification, a trial court, under its continuing jurisdiction, has the power to determine whether the preclusive language in the decree should be enforced. See *Amodio* v. *Amodio*, 247 Conn. 724, 730, 724 A.2d 1084 (1999). Accordingly, in this case, because the trial court possessed continuing jurisdiction, the court was not constrained by the four month limit of § 52-212a.

## II

The plaintiff next claims that the court improperly terminated the award of household support on the ground that it was not legally enforceable. She contends that paragraph seven clearly and unambiguously pro-

*Putnam, Inc.*, 55 Conn. App. 359, 362 n.1, 742 A.2d 366 (1999), cert. granted on other grounds, 252 Conn. 918, 919, 744 A.2d 439, 440 (2000); this is not such a claim.

vides that the award of household support is "nonmodifiable as to duration and amount," and that agreements precluding modification of alimony and support are permissible under § 46b-86 (a). We agree.

Our analysis begins with a discussion of the appropriate standard of review. In a marriage dissolution action, an agreement of the parties executed at the time of the dissolution and incorporated into the judgment is a contract of the parties. *Amodio* v. *Amodio*, 56 Conn. App. 459, 470, 743 A.2d 1135, cert. granted on other grounds, 253 Conn. 910, 754 A.2d 160 (2000) (appeal withdrawn September 27, 2000). "The construction of a contract to ascertain the intent of the parties presents a question of law when the contract or agreement is unambiguous within the four corners of the instrument. . . . The scope of review in such cases is plenary." (Citations omitted.) Id.

"General Statutes § 46b-86 (a) provides in relevant part: *"Unless and to the extent that the decree precludes modification,* any final order for the periodic payment of permanent alimony or support . . . may at any time thereafter be . . . modified by said court upon a showing of a substantial change in the circumstances of either party . . . ." (Emphasis added.)

We recently considered the nonmodification provision of § 46b-86 (a) in *Amodio* v. *Amodio*, supra, 56 Conn. App. 471, and determined that "[s]ection 46b-86 (a) clearly permits a dissolution court to make nonmodifiable . . . awards. . . . When a provision in a divorce decree that precludes or restricts a later court's power to modify financial orders is clear and unambiguous . . . that provision will be upheld. . . . A party to a contract is entitled to rely on its provisions as the final interpretation of that party's rights and duties." (Citations omitted; internal quotation marks omitted.)

In the present case, the nonmodification provision in the order for household support is clear, unambiguous and "within the four corners of the instrument." Id., 470. We therefore conclude that the provision is enforceable as a matter of law.

The defendant does not address the contractual nature of the nonmodification provision, but chooses to interpret the plaintiff's claim as a challenge to the trial court's findings of fact, namely, that the order of household support does not fit within the definition of either child support, alimony or an assignment of property and, due to its inherent ambiguity, is not legally enforceable. He contends that appellate review of findings of fact is limited solely to whether the court's conclusion was reasonable and that the court in the present case reasonably could have reached the conclusion that it did. We are not persuaded.

Even if the defendant were correct in asserting that the plaintiff is challenging the court's findings of fact as to the nature of the support obligation, the issue is moot because the defendant's obligation to pay household expenses is legally enforceable regardless of how it is characterized.

We interpreted § 46b-86 (a) as applied to child support orders in *Amodio*, where the primary issue on appeal was "whether General Statutes § 46b-86 (a) precludes modification of the amount of child support awarded at the time of a judgment of dissolution of marriage in accordance with a written agreement of the parties that precluded such modification, which agreement was incorporated by reference into the judgment of dissolution." *Amodio* v. *Amodio*, supra, 56 Conn. App. 460. There, as here, the support award was substantially more than the amount recommended by the statutory guidelines, and the plaintiff appealed from

the trial court's order of a downward modification. Id., 464.[7]

We determined in *Amodio* that modification of the child support award was precluded pursuant to § 46b-86 (a) because child support in an amount deemed appropriate was agreed upon by the parties, reduced to writing and approved by the court rendering the judgment of dissolution. Id., 472. The parties' agreement also clearly and unambiguously precluded a downward modification of the award, despite the fact that the award exceeded the statutory guidelines by more than 15 percent. Id. Moreover, we noted that the defendant did not appeal from the original judgment and stated that the plaintiff was entitled to have the benefit of the bargain that the parties had made. Id., 473. We accordingly concluded that the trial court failed to give effect to the parties' agreement and improperly reduced the child support order. Id., 472.

Our reasoning in *Amodio* is applicable here. Even if the award of household support to the plaintiff is considered child support, the defendant's argument must fail pursuant to § 46b-86 (a) because the parties agreed to the award prior to its inclusion in the judgment of dissolution, and the plain language of paragraph seven clearly and unambiguously states that the award is nonmodifiable as to duration and amount. The fact that the combined award of household and child support exceeds the statutory guidelines for child support is immaterial, as it was in *Amodio*. Furthermore, the defendant indicated during the original dissolution hearing in 1996 that he understood the agreement,[8] and

---

[7] In *Amodio*, however, an exception stipulated that the nonmodification provision would not apply if there was an increase in the defendant's gross wages.

[8] The court asked the defendant during the 1996 hearing prior to the dissolution if he had read the agreement, if he understood the agreement, if he signed the agreement willingly and if he was satisfied with the agreement, to which the defendant responded, "Yes." The court also asked the defendant if he had any questions of counsel or the court about the

he never appealed from the original judgment. Other considerations that favor our strict interpretation of the nonmodification provision in this case include the plaintiff's agreement to a reduction in the weekly child support payment from $345 to $270 and the fact that the plaintiff waived her right to alimony purportedly because the defendant agreed to provide her with household support.[9]

The defendant argues that the ruling in *Amodio* is not relevant in the present case because, unlike the situation in *Amodio*, the court found mutual mistake as to the parties' understanding of paragraph seven, the language of paragraph seven was ambiguous, the plaintiff did not comply with conditions precedent to the payments, the defendant's financial circumstances changed substantially to his detriment and the court did not adequately canvass the defendant. We do not agree.

It is true that the parties expressed different interpretations during the December, 1997 hearing as to whether the award of household support should be characterized as alimony or child support. At that time, the court also found that the defendant may have misunderstood the meaning of the term "nonmodifiable as to duration and amount." It made no similar finding, however, as to the plaintiff. Accordingly, the court did not make a finding of mutual mistake regarding the

agreement, or the effect of the agreement, to which the defendant responded, "No."

[9] The plaintiff stated during the December, 1997 hearing: "I agreed to waive the alimony . . . in lieu of the household support. . . . It was my understanding that if he had to take a lesser job, the child support was modifiable based on the way our agreement was stipulated, and that the household support was an amount that was nonmodifiable . . . ." In response to additional questioning, she stated that she agreed to waive the alimony "[o]nly under the condition that it was a nonmodifiable household support, because those were the terms [the defendant] was insistent on in order to make that agreement signable."

meaning of the nonmodification provision, as the defendant suggests. In addition, the language of paragraph seven was clear and unambiguous insofar as nonmodification is concerned. The fact that there may have been unfulfilled conditions precedent to the defendant's payments, that the defendant's financial circumstances may have changed or that there may have been an inadequate canvass of the defendant at the hearing prior to the original judgment has no bearing whatsoever on the question, raised here and in *Amodio*, of whether a clear and unambiguous nonmodification provision in a judgment of dissolution precludes modification of a support order as a matter of law.

Paragraph seven also would be legally enforceable as an award of alimony or property. Section 46b-86 (a) " 'clearly permits a trial court to make periodic awards of alimony nonmodifiable' "; *Wichman* v. *Wichman*, 49 Conn. App. 529, 535, 714 A.2d 1274, cert. denied, 247 Conn. 910, 719 A.2d 906 (1998); lump sum alimony is a final judgment not modifiable by the court even if there is a change in circumstances; *Smith* v. *Smith*, 249 Conn. 265, 276, 752 A.2d 1023 (1999); and it is well established that the assignment of property is nonmodifiable. *Taylor* v. *Taylor*, 57 Conn. App. 528, 533, 752 A.2d 1113 (2000).

Accordingly, the award of household support is enforceable as a matter of law, regardless of how it may have been characterized by the defendant or the trial court.

### III

The plaintiff finally claims that the court improperly considered the pro se status of the defendant in terminating the provision for household support. In light of our conclusion in part II of this opinion that paragraph

seven is legally enforceable, we need not consider this claim.

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

In this opinion the other judges concurred.