## MURIEL SULLIVAN *v.* WILLIAM W. SULLIVAN
### (AC 20380)

Lavery, C. J., and Spear and Daly, Js.

Argued February 26—officially released October 30, 2001

*Peter C. Hunt,* for the appellant (plaintiff).

*Christopher G. Winans,* for the appellee (defendant).

*Opinion*

LAVERY, C. J. The plaintiff, Muriel Sullivan, appeals from the judgment of the trial court fixing the amount of alimony arrearage due from the defendant, William W. Sullivan, to the plaintiff. On appeal, the plaintiff claims that the trial court improperly interpreted the provisions

of the parties' separation agreement dealing with adjustments in alimony for inflation and, on the basis of that incorrect interpretation, miscalculated the amount of alimony arrearage. We agree and, accordingly, reverse the judgment of the trial court.

The following facts are relevant to our consideration of this appeal. The parties were married for twenty-four years until their divorce in 1980. The judgment of dissolution that the trial court rendered provided for the payment of periodic alimony from the defendant to the plaintiff. The judgment also provided that the defendant pay an annual cost of living allowance in addition to the amount of alimony provided in the judgment.[1] The court found that the parties' separation agreement was fair and equitable and incorporated it by reference into the dissolution judgment. The judgment specifically referred to the parties' separation agreement for the method by which the cost of living allowance should be calculated.[2]

---

[1] The judgment provided in relevant part: "[C]ommencing this day and for a period of two (2) years thereafter, the husband shall pay to the wife, as periodic unallocated alimony, the sum of $26,000 per year payable $2166.66 per month. At the expiration of the two (2) years and for a period of eight (8) years thereafter, the husband shall pay to the wife, as unallocated alimony, the sum of $17,500 per year payable $1458.33 per month. After the expiration of said eight (8) year period, and thereafter, the husband shall pay to the wife as unallocated alimony, the sum of $15,000 per year payable $1250 per month. In addition to said payments, *if applicable as additional periodic alimony* . . . the husband shall pay to the wife as a cost of living allowance a sum to commence in February of 1982 with the first adjustment to be in February, 1983, as per Agreement on file." (Emphasis added.)

[2] Article 2.1 of the separation agreement provides in relevant part: "In addition to said payments, if applicable as additional periodic alimony or child support as the case may be, the Husband shall pay to the Wife as a cost of living allowance a sum to commence in February of 1982, with the first adjustment to be in February, 1983, and to be arrived at as follows:

"(a) The Consumer Price Index figure applicable to January, 1982, shall be the basis for further increases. On the second day of February, 1983, and on the same day of each year thereafter, an evaluation of the cost of living for the preceding calendar year shall be made and an average figure of the twelve months of the preceding calendar year of the Consumer Price Index shall be taken.

On June 22, 1999, the plaintiff filed a motion for contempt, alleging, inter alia, that the defendant had failed to pay the cost of living adjustments provided for by the parties' separation agreement that was incorporated into the judgment dissolving their marriage for 1983 and all subsequent years. The plaintiff also sought interest on the arrearage.

On August 11, 1999, the trial court conducted a hearing on the plaintiff's motion at which experienced certified public accountants testified for both the plaintiff and the defendant, offering conflicting testimony as to the proper method for calculating the total amount of cost of living adjustments that the defendant should have paid. Their disagreement revolved around the proper method for calculating the cost of living allowance provided for in the agreement.

In its memorandum of decision, the court accepted the calculations of the defendant's accountant as to the amount of the cost of living increase for each year.[3] The court rendered judgment in the plaintiff's favor for the total of these amounts for all relevant years. The court denied the plaintiff's request for an award of interest, concluding that "the husband [acted] in good faith by paying his monthly alimony obligation for the past nineteen years; therefore, the court will not assess any interest . . . ." The court accordingly denied the plaintiff's motion for contempt, finding no wilful violation

"(b) If the cost of living so computed shall be different from the present cost of living, then all monies paid by the Husband to the Wife for alimony and support during the preceding calendar year shall be adjusted in exact proportion as the cost of living figure of the preceding year is to the newly established figure. Any monies computed to be due in accordance with the above formula shall be paid by the Husband to the Wife in twelve monthly payments for the next calendar year."

[3] Although the trial court stated that it was "unpersuaded by the interpretation of this agreement by either accountant," it nonetheless used the exact total amount of cost of living allowances contained in the analysis provided by the defendant's accountant.

of a court order by the defendant. Following the court's denial of a motion to reargue, the plaintiff filed this appeal.

The standard of review governing this matter is well settled. "In a marriage dissolution action, an agreement of the parties executed at the time of the dissolution and incorporated into the judgment is a contract of the parties. *Amodio* v. *Amodio*, 56 Conn. App. 459, 470, 743 A.2d 1135, cert. granted on other grounds, 253 Conn. 910, 754 A.2d 160 (2000) (appeal withdrawn September 27, 2000). The construction of a contract to ascertain the intent of the parties presents a question of law when the contract or agreement is unambiguous within the four corners of the instrument. . . . The scope of review in such cases is plenary." (Internal quotation marks omitted.) *Way* v. *Way*, 60 Conn. App. 189, 195, 758 A.2d 884, cert. denied, 255 Conn. 901, 762 A.2d 910 (2000). The language of the separation agreement in this case is clear and unambiguous; our review is therefore plenary.

As stated previously, the court utilized the calculations of the defendant's expert witness, a certified public accountant, as to the amount of cost of living increases that the defendant did not pay. These calculations were incorrect, and so we reverse the judgment of the trial court, which was based on those calculations. The flaw in the calculations performed by the defendant's accountant is that, when performing the necessary calculation for each year, he used the original base amount[4] of agreed alimony as the basis for determining that year's cost of living adjustment.

The parties' separation agreement, however, provided that "*all monies* paid by the Husband to the Wife

---

[4] The base amounts of alimony are taken from the parties' separation agreement. See footnote 1.

. . . during the preceding calendar year shall be adjusted in exact proportion as the cost of living figure of the preceding year is to the newly established figure." (Emphasis added.) This language means that in each year, after the cost of living adjustment is calculated, that adjustment should be added to the base alimony for the purposes of calculating the cost of living adjustment for the following year.

To ensure that the trial court is able to calculate the amount of arrearage accurately on remand, we provide the following road map for computing the amount that the defendant should have paid in each year since 1983. For 1983, the court should multiply the amount provided in the agreement, $17,500, by the 1983 Consumer Price Index (CPI), and then divide it by the 1982 CPI. For each year from 1984 through 1989, the court should multiply the amount computed by this method for the prior year by that year's CPI and divide it by the previous year's CPI.

The calculation for 1990 is slightly more complex because of the adjustment in the base amount that occurred in that year.[5] First, it is necessary to determine the aggregate cost of living increases by the method outlined previously. This is the difference between the 1989 payment and the original base amount of $17,500. This amount must then be adjusted for the cost of living by multiplying it by the 1990 CPI and dividing it by the 1989 CPI. Finally, the adjusted amount must be added to the new base amount, $15,625, to determine the amount to be paid for 1990.

[5] Because the separation agreement is dated April 24, 1980, the eight year period during which the annual payment was to be $17,500 ended in April, 1990. As a result, the amount of alimony for the *calendar* year 1990 is based on $17,500 per year for the first quarter of 1990 (the end of the eight year period with payments of $17,500) and $15,000 per year for the remainder of 1990.

For 1991, the first step is to take the aggregate cost of living increase amount, adjusted to the 1990 cost of living as outlined previously, and multiply it by the 1991 CPI, and then divide it by the 1990 CPI to adjust it to the 1991 cost of living. The court should then add this amount to the 1991 base amount, $15,000, to determine the 1991 payment.

For 1992 and all subsequent years, all that is necessary is to take the previous year's payment, computed as outlined previously, and multiply it by that year's CPI and then divide it by the previous year's CPI. The application of this method will provide the correct amount that should have been paid in alimony for each year from 1983 through the present. Subtracting the amount that the defendant actually paid will yield the arrearage for each year; adding these amounts for all years in question will provide the total arrearage in alimony applicable to all years.

The method outlined in this opinion for calculating the cost of living adjustment is supported by a number of statutes and cases, both from Connecticut and from several of our sister states, that have provided that cost of living adjustments should be calculated based on the previous year's payments, including prior cost of living adjustments.

For example, General Statutes § 3-2a (c) provides that the cost of living allowance portion of the pensions of former governors is to be calculated on the basis of the preceding year's pension and cost of living allowance. General Statutes § 5-162b provides that the cost of living adjustment for retired state employees is to be based on the combined monthly retirement salary and cost of living allowances paid during the prior year.

In *Dubis* v. *East Greenwich Fire District*, 754 A.2d 98 (R.I. 2000), the Rhode Island Supreme Court, construing an agreement that provided for a 2.5 percent cost

of living allowance each year, stated: "It is clear that the most reasonable way that this . . . [cost of living allowance] could be tied to cost-of-living rises in the economy is for it to be calculated using the entire pension benefit of the previous year as a base, *including the previous year's [cost of living allowance]*. To construe this unambiguous contract any other way would not give the [cost of living allowance] provision its ordinary meaning and would produce an absurd result." (Emphasis added.) Id., 100–101.

In *Celentano* v. *Oaks Condominium Assn.*, Superior court, judicial district of Waterbury, Docket No. 0159297 (January 11, 2001), the trial court noted that the correct method for calculating a cost of living increase is to multiply the previous year's payment "by a fraction that has the current year's consumer price index as the numerator and the consumer price index for [the previous year] as the denominator," the same method we use in this opinion.

In *Grant* v. *Nellius*, 377 A.2d 354 (Del. 1977), the Delaware Supreme Court dealt with the proper interpretation of a state statute that provided in relevant part: "All employees . . . shall be paid a salary supplement as a percentage of their base pay equivalent to the percentage change in the Consumer Price Index for the Philadelphia region. The Consumer Price Index figure at the beginning of each calculation period shall be subtracted from the Consumer Price Index at the end of the calculation period, multiplied by 100 and divided by the Consumer Price Index at the beginning of the period to determine the percentage of increase or decrease for cost-of-living for that period. . . . For purposes of this section, base pay is defined as *all salary*, wages and fees . . . paid to an employee." (Emphasis added; internal quotation marks omitted.) Id., 355–56.

Interpreting this provision, the Delaware Supreme Court stated: "In our view . . . [the statute's] sole pur-

pose is to create an automatic mechanism to keep future State salaries in line with inflationary trends in the regional economy so that salaries will be adjusted to meet marginal changes in the 'cost-of-living.' " Id., 357. The Delaware statute uses a method identical to the one set forth in this opinion to calculate the cost of living adjustment for state employees.

The plain language of the separation agreement and the authorities set forth interpreting similar language inexorably lead us to the conclusion that the method outlined in this opinion is the method set forth in the separation agreement for computing yearly cost of living adjustments.

In summary, the method that the court adopted for computing the cost of living adjustment failed to account for the effect of prior cost of living adjustments, which the parties' separation agreement clearly indicates it was their intent to include, in the yearly calculation of cost of living adjustments.

The judgment is reversed and the case is remanded for further proceedings to recalculate the alimony arrearage using the method outlined in this opinion.

In this opinion the other judges concurred.